[Crim. No. 4836. In Bank. Apr. 2, 1948.]

THE PEOPLE, Respondent, v. BERNARD STEIN et al., Appellants.

Morris Lavine for Appellants.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, William E. Simpson, District Attorney, and Jere Sullivan, Deputy District Attorney, for Respondent.

SCHAUER, J.—On November 12, 1946, defendants Bernard Stein and Morris Leder pleaded guilty to two charges of robbery, admitted that at the time of the commission of the offenses they were armed with loaded pistols, and were adjudged guilty of robbery of the first degree. In addition to the adjudications of guilt of the substantive offenses the court found that each defendant was "an HABITUAL Criminal with two prior convictions." Certain other charges against defendants (robbery and kidnapping for the purpose of robbery) were dismissed. No appeals from the judgments of conviction were taken. On December 11, 1946, after the time for appeal from the judgments had passed (Rules on Appeal, rule 31), defendants filed "notice of motion . . . to set aside the finding and judgment that defendants are

habitual criminals.'' On December 17, the motion was presented on behalf of both defendants and as to each it was contended, for reasons hereinafter summarized, that the case is ''exceptional'' within the purview of subdivision (c) of section 644, and consequently, that the earlier finding of habitual criminal status should be vacated. Defendants appeal from the order denying their motion.

The People urge that the denial of defendants' motion is not an appealable order and, therefore, that defendants' contentions cannot be considered by this court; they also dispute the merits of such contentions. We have concluded that defendants are entitled to appellate review of these proceedings after final judgment, but that on the merits the trial court's refusal to set aside the determinations of habitual criminality was correct.

### Appealability of Order

█ It is defendants' position that their motion was authorized by subdivision (c) of section 644 of the Penal Code (''in exceptional cases, at any time not later than 60 days after the actual commencement of imprisonment, the court may, in its discretion, provide that the defendant is not an habitual criminal''), and that the order denying the motion is appealable because it is an ''order made after judgment, affecting the substantial rights of the party'' (Pen. Code, § 1237).

The People rely upon *People* v. *Simms* (1940), 41 Cal. App. 2d 466, 469 [107 P.2d 86], which holds that such a refusal ''to provide that the defendant is not an habitual criminal'' is not an appealable order. Such holding, according to the District Court of Appeal, was impelled by *People* v. *Carkeek* (1939), 35 Cal.App.2d 499, 506 [96 P.2d 132]. The Carkeek case, and *People* v. *Tindall* (1939), 35 Cal. App.2d 507 [96 P.2d 136], which follows it, did not involve motions made under subdivision (c) of section 644; such cases dismissed appeals from orders denying motions, made many months after the judgments became final, to modify such judgments by striking therefrom the determination of habitual criminality; their holdings are based upon the view that to allow an appeal from an order denying a motion to modify a final judgment, where the matter presented for review could have been considered on appeal from the judgment, would in effect nullify the limitation on the time for

appeal. This reasoning does not apply to the present appeal, which is from a ruling that must be made within "60 days after the actual commencement of imprisonment" and in the making of which ruling the court must exercise judicial discretion.

According to the Simms case (p. 469 of 41 Cal.App.2d) a motion for relief under subdivision (c) of section 644 "merely asks the court to repeat or overrule the former ruling on the same facts." This is not correct. Subdivision (c) provides for relief from the earlier and more or less tentative finding of habitual criminal status where the court at the later hearing in the exercise of its discretion determines that the case is "exceptional." The Legislature has not undertaken to enumerate the facts, or even to indicate the character of the showing, which may be considered as establishing that the case is "exceptional." Hence, the field of discretion is large. Nevertheless, it must be a sound judicial discretion, based upon reason, law and the facts, not upon caprice, sympathy or whimsy (*Gossman* v. *Gossman* (1942), 52 Cal.App.2d 184, 194-195 [126 P.2d 178]). Since the court is given the power to relieve the defendant of the earlier determination; since that power must be exercised within the bounds of judicial discretion; and since the order is made after final judgment and affects the substantial rights of the defendant, it appears that the defendant should have the right to invoke exercise of the court's power by motion, with the production of supporting evidence, to that end, and that, from an adverse ruling, a right of appeal is within the reach of subdivision (3) of section 1237 of the Penal Code. Expressions to the contrary in *People* v. *Simms* (1940), *supra*, 41 Cal.App.2d 466, 469, are disapproved.

### Scope of Defendants' Showing

█ Generally speaking, as to each defendant the attempt to show that his case is "exceptional" was based primarily upon the proposition that because of some infirmity, or near infirmity, in one of his two prior convictions, and because of the character of the earlier offense, the age of the defendant, or the nature of an institution in which he had previously been confined, the particular defendant does not fall within the class of persons upon whom the habitual criminal act was designed, or should be allowed, to operate.

If the evidence, without contradiction, established as to

either defendant that the first or tentative* finding of habitual criminal status was inadvertent or improvident in that as a matter of law a prior conviction which had been relied upon was wholly incompetent as a basis for the finding, then it would seem that the failure of the court to "provide that the defendant is not an habitual criminal" would constitute an abuse of—in other words, exceed—the court's discretion. But where the evidence is sufficient to establish that a defendant has suffered the requisite prior convictions and there is a substantial conflict in the claimed showing that the case is "exceptional," or, even if it be assumed to be "exceptional," if there exists substantial conflict in the inference to be drawn as to whether the interests of the State will be best served by providing that . "the defendant is not an habitual criminal" or by letting the contrary determination stand, then the decision of the trial court, either way, would appear to be authorized and beyond appellate intervention.

On this appeal the evidence is such (and this is at least impliedly recognized by defendants) that the defendants cannot hope to prevail unless they can establish that as a matter of law one or more of the relied upon prior convictions is incompetent within the purview of section 644. We consider their several claims in this regard, separately.

### Correctness of Determination
### That Leder is an Habitual Criminal

The information alleges and Leder admitted that he was convicted of burglary, a felony, in California in 1936, and served a term of imprisonment therefor in the state prison. He contends that, since the degree of the burglary was not alleged, admitted or proved, it must be presumed that he was convicted of burglary of the second degree only. This contention is beside the point, for the applicable provision of the Habitual Criminal Act (Pen. Code, § 644, subd. (a) [Stats. 1945, ch. 934, § 1]) enumerates "burglary,"

*That the first finding, in this case, of habitual criminal status, was regarded by all parties concerned, including the trial judge, as being merely tentative or provisional is established by the record. Among other things, the trial judge stated, at the original hearing, that "as counsel has indicated, there is time for reconsidering the matter if sufficient evidence is brought to us to justify a modification . . . there is time within sixty days of the actual incarceration of the defendants to bring up this matter again. In making that statement, I want all of you to understand that I am not intimating that we will do anything about it, but the law does provide that it may be reconsidered at any time within sixty days."

without mention of the degree of the crime, as one of the offenses upon which a determination of habitual criminality can be based. Such provision (material also to consideration of defendant Stein's hereinafter stated contention) is as follows: "Every person convicted in this State of the crime of robbery . . . who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any State prison and/or Federal penitentiary, either in this State or elsewhere, of the crime of . . . burglary [or other named offenses] . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the State prison for life."

### Correctness of Determination
### That Stein is an Habitual Criminal

The information alleges that Stein was convicted of "Breaking and Entering and Larceny, a felony," in New Jersey in 1928 and "served a term of imprisonment therefor in a penal institution." Before judgment was pronounced, and again upon argument of the motion under subdivision (c) of section 644, the trial court's attention was directed to the facts that at the time of the commission of the offense Stein was but 16 years of age and that he was confined in the New Jersey Reformatory, not the New Jersey State Prison. Stein admitted the facts of this conviction and confinement. He contends that as a matter of law it is not sufficient to support the determination that he is an habitual criminal.

Stein asserts that the New Jersey conviction "is not a felony within the California Penal Code section [644]" because the statutes of New Jersey which proscribed breaking and entering with intent to steal stated that such offense was a "high misdemeanor." (N.J.S.A. 2:115-1, 2:115-2 [L. 1898, c. 235, §§ 131, 132, p. 830].) The New Jersey denomination of the offense and its grade is not controlling. The question is whether, in New Jersey, it was adjudicated that Stein committed an offense the elements of which correspond to those of an offense enumerated in section 644 of our Penal Code. (*In re Wolfson* (1947), 30 Cal.2d 20, 23-24 [180 P.2d 326], and cases there cited.) The trial court, with the New Jersey law and the record of the New Jersey conviction before it, correctly determined that the elements of the offense of which Stein was convicted in 1928 corresponded to the essential elements of the California felony of burglary as defined by

the statutes in force in 1928. (Pen. Code, §§ 459-461 [Stats. 1913, p. 228; Stats. 1923, p. 747; Stats. 1925, p. 235].)

 Stein argues, further, that confinement in the New Jersey "Reformatory" for an offense committed when he was only 16 years of age is not equivalent to service of a term in a "State prison" as required by section 644. The following statutes of New Jersey apply to imprisonment in the "Reformatory": A high misdemeanor is punishable by fine or "imprisonment, with or without hard labor, as the court may direct, for a term not exceeding seven years, or both." (N.J.S.A. 2:103-5 [L. 1898, c. 235, § 217, p. 854].) "Any male person between the ages of sixteen and thirty years, who has been convicted of a crime punishable by imprisonment in the state prison, who has not been previously sentenced to a state prison or a penitentiary in this or any other state, may be committed to the reformatory." (N.J.S.A. 30:4-147 [L. 1918, c. 147, § 316, p. 367].) "The New Jersey Reformatory shall include the existing reformatory near Rahway and all farms, camps, quarries or grounds, where prisoners sentenced to the reformatory may, from time to time, be kept, housed or employed." (N.J.S.A. 30:4-146 [L. 1918, c. 147, § 315, p. 367].) In 1928, the only correctional or penal institutions of New Jersey wherein Stein could have been imprisoned were the "State Prison" and the "Reformatory" near Rahway. (L. 1918, c. 147, § 118, p. 349.)

We agree with the trial court that the "Reformatory" was a penal institution for young first offenders and (as said in *In re Gilliam* (1945), 26 Cal.2d 860, 864-865 [161 P.2d 793], with reference to a federal reformatory) "not at all akin to a training school for juvenile offenders who are committed to the custody of such school but who are not confined therein under sentence of imprisonment." The New Jersey proceeding against Stein was not a "juvenile proceeding"; it was a prosecution for the crime of burglary. "[I]t is the character of the institution and its inmates together with the nature of the proceedings leading to confinement therein which determine its status in relation to the language of the code section [644]." (*In re Gilliam* (1945), *supra,* p. 863 of 26 Cal.2d; *In re Wolfson* (1947), *supra,* p. 29 of 30 Cal.2d.)

For the reasons above stated the order appealed from is affirmed as to each defendant.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.