[Crim. No. 2628.   First Dist., Div. One.   Jan. 26, 1950.]

THE PEOPLE, Respondent, v. DAVID RICHARDSON, Appellant.

David Richardson, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant and one Stocker were tried on, and convicted by a jury of, the charge of violation of section 211 of the Penal Code (robbery). Three prior convictions were admitted by Stocker. Two prior convictions were charged against defendant, which he denied. One of these was dismissed. The jury found that defendant had suffered the other conviction. From the judgment entered on the jury verdict (the court fixed the degree as second) defendant appealed. Stocker did not appeal.

### GROUNDS OF APPEAL

Defendant appears in propria persona and it is difficult to determine exactly the points he desired to raise. Apparently his grounds of appeal are: (1) alleged insufficiency of the evidence; (2) prior conviction claimed not binding upon him because of minority; (3) claimed matters outside the record prove his innocence; (4) he was not represented by counsel at trial.

### 1. *Evidence Sufficient*

Primarily, defendant contends the evidence against him was perjured, contradictory, mistaken and untrue. We have carefully examined the transcript of the evidence. It fully and completely supports the conviction. Obviously, the veracity of the witnesses was a matter for the jury to determine, rather than this court.

The evidence for the prosecution was as follows: On the evening of June 15, 1949, at about 9:15, Edward Hanson, a clerical employee of the Union Oil Company, 425 Front Street, and a resident of Menlo Park, left the office of his employer to walk to the Third and Townsend Depot of the Southern Pacific Railroad to catch the 9:45 p. m. train. As he passed the entrance to a hotel at 574 Third Street (between Bryant and Brannan, on the west side of Third) he saw Stocker, who grabbed him by the arm and forced him into the doorway of the hotel. There he encountered defendant, who grabbed him, removed his watch, and, with Stocker, pulled him into the hallway of the hotel. While Stocker held him defendant struck him and caused him to fall to the floor. Defendant then went through Hanson's pockets, took his wallet and two $1.00 bills. The wallet contained no money, but did contain

various identification cards, receipts, and a pay voucher for $670.60, payable to Hanson. They then released Hanson who ran into the street, while defendant and Stocker went up the stairs of the hotel, through the hallway, and a rear exit.

Special Officer Scott appeared, in uniform, and Hanson reported what had happened. Scott told Hanson to stay in front of the building and went into the building toward the rear. When Scott was in the hotel he heard the rear door close. Following the sound, he went out the rear door onto Ritch Street (west of Third, running parallel to it). As he did so he observed two men (Stocker and defendant) going on a "dog trot" down Ritch toward Bryant. They stopped near Bryant, adjacent to a vacant lot on which some shrubbery was growing. Scott observed the two men going through some papers which they threw over a small fence into the vacant lot and on top of a bush. He made himself known to them, and placed them under arrest. As he did so, defendant threw two crumpled pieces of paper to the ground. Scott searched them briefly, to see that they were not carrying weapons, handcuffed them to each other, and took them back to Hanson. Hanson promptly identified them as the two who had attacked him. He again identified them at the trial.

Scott had Hanson go to Third and Townsend to get Officer Gale, and Scott, from the police box, called for a radio car. The attackers were taken away in the radio car and Scott, Gale and Hanson made a further search of the area in which the defendants had been arrested. More papers were found and among them two crumpled $1.00 bills were found at the exact spot where the defendant was seen by Scott to drop two pieces of paper. They also found a driver's license, a commutation ticket, and the $670.60 voucher payable to Hanson all of which Hanson identified as having been in his wallet. The watch and wallet were never found.

The only evidence for the defense was the testimony of Stocker and Richardson, both of whom denied robbing Hanson and that either had been in front of the hotel at 574 Third Street before the robbery. Both claimed that they met at the corner of Bryant and Ritch Street where Stocker asked Richardson for a cigarette, and at that moment Officer Scott arrived. They denied that either threw away the money or the papers. Stocker's testimony was impeached by his admission of priors, and that of defendant by proof of a prior. The jury clearly and properly disbelieved their testimony.

Alleged discrepancies in the testimony of Officer Scott at the preliminary examination and at the trial, the fact that the watch and the wallet were not found, and other matters set forth in defendant's briefs, at best go only to the weight of the evidence and were matters for the jury, and not this court, to determine.

### 2. *Minority Does Not Affect Prior Conviction*

It is not clear whether defendant raises this point as a ground of appeal. In his opening brief he states that the attorney who represented him at the preliminary examination told him that because he was under 21 years of age at the time, his conviction in Ohio in 1938 of the crime of burglary and his imprisonment therefor in the Ohio State Penitentiary did not constitute a prior. It was not a juvenile court proceeding. In spite of his youth, such conviction and incarceration constitutes prior felony conviction and servitude. (*In re Gilliam*, 26 Cal.2d 860 [161 P.2d 793]; *People* v. *Stein*, 31 Cal.2d 630 [191 P.2d 409].)

### 3. *Matters Outside the Record*

Defendant has made statements concerning matters outside the record and of which there is no proof. He makes the broad statement that one of the jurors was intoxicated; that at least half the jury were ''prejudiced against'' him by an unnamed officer of the law; that the ''Sheriff of the County Jail'' advised him to ''cop out'' and he would see that defendant got only a couple of months in the county jail, otherwise he would see to it personally that defendant got the maximum. Defendant also claims that ''Stocker . . . admitted to me under pressure that he had hidden in the farther end of the alley after the felony, and when I happened along a few seconds later, that is when he stepped out and asked me for a cigarette.'' There is no record of any of these matters. They were not offered at the trial nor on the motion for new trial (assuming they were all relevant and admissible). They cannot be considered on appeal. (*People* v. *Kabakoff*, 45 Cal. App.2d 170 [113 P.2d 760].)

### 4. *Counsel at Trial*

Again it is not clear whether defendant is urging as a ground of appeal his claimed lack of counsel at the trial. His only reference to this is in his opening brief, where he states, ''I was put at a disadvantage by the court, and having no one to defend my rights as a citizen of the United States.'' He

does not explain his reference to the court and our examination of the transcript fails to disclose any improper action. Actually, the court leaned backwards to be fair. An instance of this occurred when the court appointed a deputy public defender to assist defendant at the trial. Defendant was represented by counsel of his own choosing up to the day when the cause was first to be tried. On that day counsel requested permission of the court to withdraw and defendant expressed to the court his desire to represent himself in propria persona. The court permitted the counsel to withdraw and made an order that defendant represent himself. The case was then continued approximately six days for trial. At the very beginning of the trial the court, without request, appointed a deputy public defender "to counsel with . . . [defendant] if he so desires in order that every right which he has as an American citizen and as a defendant is fully accorded. If he chooses to avail himself of that, he can do so; if he doesn't, that is, of course, his right. At any rate, I want the record to show the Court, in the exercise of its discretion, is appointing counsel for him, and I might say able and experienced counsel which he may avail himself if he chooses." The record shows that the deputy public defender so appointed assisted defendant in examining witnesses and in objecting to the introduction of evidence. In nowise was defendant deprived of counsel and in nowise can defendant truthfully say that he had no one to defend his rights as a citizen of the United States. (See *People* v. *Northcott,* 209 Cal. 639 [289 P. 634, 70 A.L.R. 806].) It is evident from his closing brief that defendant believes that on appeal he has the right to appear and testify further in the matter and to offer the testimony of Stocker, who, in an affidavit accompanying defendant's closing brief, sets up matters directly contradicting Stocker's testimony at the trial, which matters, if true, completely exonerate defendant, and show that the crime was committed by Stocker and a named other person. There is no method by which, on this appeal, the further testimony of plaintiff can be taken nor the Stocker affidavit considered.

The judgment and order denying new trial are affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1950.