[Crim. No. 3272. First Dist., Div. One. May 14, 1957.]

THE PEOPLE, Respondent, v. CLARENCE M. PEARSON, Appellant.

Clarence M. Pearson, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, J. Frank Coakley, District Attorney (Alameda), and W. Sayer Snook, Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—Convicted of violating sections 245 and 12021 of the Penal Code, assault with a deadly weapon and possession by a felon of a firearm capable of being concealed upon the person, defendant has appeared.

■ (1) *Was defendant denied the right to defend, by being denied the right to prepare and by having counsel not of his own choosing forced upon him by the court? No.*

He wished to represent himself. He states in his brief that he told the trial judge that he did not want the public defender and asked for an order permitting him to be taken to the law library for approximately 15 hours to prepare his defense. There is only one reference to the public defender in the transcript of the trial. In the absence of the jury, the court said, "Now, the Public Defender has been making his services available to you up to this point, and I propose that he continue in the same capacity, but in the court room in the presence of the jury, do you want him to sit at counsel table, or would you rather he sit somewhere else in the court room where you can call on him if and when you need him?" The defendant answered, "I guess at counsel table would be satisfactory, Your Honor." That, it would appear, was done, but throughout the trial defendant conducted his case in person, asking all questions and making all motions and presenting all arguments.

We see in that no infringement of defendant's right to conduct his defense in person. The practice of making counsel from the public defender's office available to defendants acting in propria persona was approved in *People* v. *Richardson,* 95 Cal.App.2d 703, 707 [213 P.2d 734].

Concerning the request to be taken to the law library for 15 hours of research, the record is silent. ■ Points that have no foundation in the record cannot be considered by a reviewing court. (*People* v. *Ruiz,* 103 Cal.App.2d 146, 150 [229 P.2d 73].) ■ Moreover, a defendant who chooses to conduct his defense in person does so subject to the disabilities normally attendant upon the status of prisoner. "A defendant who intelligently refuses counsel and insists upon personally conducting and controlling his defense does not lose the status of prisoner and become entitled to extraordinary privileges not accorded defendants who are represented by counsel, nor does he become entitled to proceed in a manner different from that permitted to attorneys." (*People* v. *Chessman,* 38 Cal.2d 166, 174 [238 P.2d 1001].)

(2) *Was the gun which defendant used a "deadly weapon" within the meaning of that term as used in section 245 of the Penal Code? Yes.*

Defendant threatened to shoot, not to use the gun (a Colt automatic pistol) as a bludgeon. It had six shells in the clip, none in the firing magazine, but was in full firing order. The clip was in the gun, which could be fired by pulling a slide back and allowing it to go forward again; i.e., by holding the gun in one hand and pulling the slide back with the other hand.

Defendant contends that this was an unloaded gun and that its possession did not give him the requisite "present ability" to commit the threatened act of shooting. The answer we find well expressed in *People* v. *Simpson,* 134 Cal.App. 646 [25 P.2d 1008]. We need only to substitute "pistol" for "rifle" in the following statement made by the court in that case: "An automatic repeating rifle may not be termed an unloaded gun when its magazine contains loaded cartridges which may be instantly transferred to the firing chamber by the mere operation of a lever. It is unreasonable to hold that a rifle is unloaded and that it is not susceptible of immediate discharge under such circumstances. . . . We are of the opinion an automatic repeating rifle which contains loaded cartridges in its magazine may constitute a deadly weapon with which one may have the present ability to commit violent injury upon another person, by firing the weapon at him, although it is first necessary to transfer a loaded shell to the firing chamber by operating a lever. The questions as to whether the accused person really intends to transfer the shell and fire the weapon are facts to be determined by the jury from the circumstances of the case." (P. 651. See also *People* v. *Young,* 105 Cal.App.2d 612, 614 [233 P.2d 155].)

Defendant would distinguish the Simpson case on the ground of a conflict of evidence whether defendant made any effort to operate the lever. That, however, bears on the question of the defendant's intent, not the character of the weapon.

He would distinguish the Young case on the ground that the meaning of "deadly weapon" as used in section 1203 of the Penal Code was involved and the fact that there the defendant had been convicted of robbery and section 211a, dealing with robbery, uses the term "dangerous or deadly weapon" not "deadly weapon." In some situations that conceivably would make a difference, but not here. The gun involved in the Young case, similar to that involved in the instant case, "contained cartridges in the magazine. These cartridges could

be chambered and fired almost instantly. It therefore constituted a deadly weapon." (P. 614 of 105 Cal.App.2d.)

■ (3) *Was the gun obtained as the result of an illegal search and therefore inadmissible as evidence? No.*

Four officers, suspecting that defendant had issued some fictitious checks, went to his home (with neither a search warrant nor a warrant for defendant's arrest) and knocked on the door. Defendant's wife opened it. Officer Williams told her his name and asked to see the defendant, Clarence. He also told her the house was surrounded and to tell the defendant not to leave by the back door. She made a gesture and pointed to the kitchen. The defendant was seated on the kitchen floor. The officers told the defendant they wanted to talk to him "down town." Williams suggested he put his coat on.

Defendant went into the back bedroom and got a coat. Williams followed him into the front room. The other officers were in the front room. Inspector Harper started to frisk the defendant. When Harper got to defendant's hips, the defendant stepped off, reached in his coat, pulled out a .32 Colt, and said, "This is it, line up against the wall, all of you." He pointed the gun at all the officers in the room. He was then disarmed and taken into custody.

It well may be that the officers visited defendant to make an arrest and lacked authority to arrest him. If so and if their discovery of the gun was a natural result or product of such endeavor on their part the seizure would be illegal. In *Badillo* v. *Superior Court*, 46 Cal.2d 269, 273 [294 P.2d 23], the "defendant's flight out the front door and attempted disposal of the evidence was the direct result of . . . [a police officer's] . . . illegal entry." But in our case the defendant's pointing the gun at the officers and threatening them was no mere gesture of disposal of contraband, which might be viewed as "the direct result" of the officers' conduct. They were not threatening him with bodily harm. Instead, he was threatening them, voluntarily producing the gun in aid of his assault upon them. What really happened was that in the very act of unlawfully assaulting the officers the defendant voluntarily exposed the gun to their view. That was not the direct or any result of a search, legal or illegal. Such a view of the incident is supported by the officers' testimony. The fact, if it be a fact, that defendant's testimony may be somewhat inconsistent therewith produced at most a conflict which the triers of the facts resolved against him.

**(4)** *Was the evidence sufficient to prove ownership or possession of a concealable weapon? Yes.*

An ex-convict "who owns or has in his possession or under his custody or control" a pistol "capable of being concealed upon the person" is guilty of the offense proscribed by section 12021 of the Penal Code. The gun had been reposing in a pocket of his overcoat. He testified he did not know a gun was in the pocket, not until he had donned the coat upon this occasion. His wife testified that it was her gun and as far as she knew the defendant did not know of its existence. However, the jury could have inferred from the whole sequence of events that defendant did know of the gun's existence, that he deliberately put on the coat so as to have access to the gun when he returned to the room where the other officers were standing, and that his wife was testifying untruthfully in his behalf.

**(5)** *Was it error to allow proof of out of court inconsistent statements of defendant's wife? No.*

Defendant's wife testified that the gun was hers and that to her knowledge he knew nothing about it. On cross-examination, she denied making a statement to the police shortly after defendant's arrest that he had it when she and he were on a fishing trip. Inspector Harper testified that on this occasion defendant's wife told them that defendant had the gun in the glove compartment of the car on a fishing trip the previous fall. No objection was made to this testimony at the trial.

This was proper cross-examination. (*People* v. *Brazil,* 53 Cal.App.2d 596, 599-601 [128 P.2d 204]. See also *People* v. *McCoy,* 25 Cal.2d 177, 186 [153 P.2d 315]; *People* v. *Crow,* 48 Cal.App.2d 666, 671 [120 P.2d 686].)

**(6)** *Was it prejudicial error to take defendant's fingerprints against defendant's will and use them as evidence of a prior conviction, in proof of a violation of section 12021? No.*

Whether the police had authority to take defendant's fingerprints against his will and without his affirmative freely given consent, we need not decide. Upon cross-examination he freely admitted his prior felony convictions. The fingerprint evidence of such convictions was, therefore, cumulative and as such not prejudicial.

**(7)** *Did the district attorney commit prejudicial misconduct? No.*

It was not misconduct for the prosecutor in argument

and at other times to treat this as a loaded, not an unloaded, gun. The evidence supports such a view.

 Nor was it misconduct for the prosecutor in his argument to the jury to refer to defendant's wife's testimony as untruthful, concerning where she got the gun. His statement in that regard was qualified by him as expressive of his opinion. It was followed by the comment that her recollection as to where she got the gun was "faint," as indeed it was.

 The prosecutor also commented upon the gun having been around the house for months. "It was unmistakably Clarence's gun, and as the charge in this indicates, a con or felon with a gun cannot register a gun because he cannot have it lawfully. That is probably why the gun was not registered." The fact that the gun had been around the house for months was testified to by appellant's wife. Inspector Harper testified that the gun according to the officer's information was not registered. That the gun was the defendant's was a conclusion, and from the context it was apparent that it was expressed as the prosecutor's conclusion.

We deem this to have been fair comment. Moreover, we have found in the record nothing to indicate that defendant objected at the time and requested the court to admonish the jury to disregard statements which he now challenges. (See *People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881]; *People* v. *Sutic,* 41 Cal.2d 483, 497 [261 P.2d 241]; and *People* v. *Adamson,* 27 Cal.2d 478, 494 [165 P.2d 3].) There is nothing about the prosecutor's statements in this case to bring them within the scope of the exception to the rule noted in *People* v. *Codina, supra,* at page 362 of 30 Cal.2d.

 Defendant complains that upon cross-examination he was asked concerning other crimes he had committed. This occurred in a series of questions concerning other guns he had owned. The fact that he admitted owning many guns, most of them illegally, would make it more likely that he did knowingly possess a gun at the time charged in the information. The only question going improperly into the circumstances of a prior conviction appears to be the following, asked after he admitted owning or having possession of a gun in 1939 at the time of his arrest in Los Angeles: "Is that the occasion you were shot through the arm yourself and another man was kicked in the forehead?" He answered this in the affirmative, making no objection. This would seem to have nothing to do with the issues in this case. However, in view of the fact that he admitted numerous prior felony convic-

tions, and that it is not clear that he was involved in the physical violence described, it is not likely that this isolated question was prejudicial. The lack of objection and the absence of a showing of prejudice preclude reversal on these grounds.

(8) *Was error committed in the giving of instructions?*

Defendant complains of the court's giving the jury the dictionary definitions of "present" and "ability," followed by this instruction: "When one uses the immediate threat of violence toward persons to force a present act or omission without lawful right to do so, and proceeds as far as it is then necessary to go with intent to use such violence if necessary, the crime of assault may be complete despite the fact that such violence was neither used nor directly attempted." This impresses us as a correct statement of the law. (*People* v. *McCoy*, 25 Cal.2d 177, 191 [153 P.2d 315].) Defendant distinguishes the McCoy case and others upon the ground that the nature of the weapon was not involved in these cases. That is true, but this instruction also has nothing to do with the character of the weapon.

The court gave the following definition of a deadly weapon: "Any object, instrument or weapon when used in a manner capable and likely to produce death or great bodily injury is then a deadly weapon." From this, the instruction defining assault with a deadly weapon and the definitions of "present" and "ability," the jury was presented with a question of fact as to whether or not the gun in its then condition constituted a deadly weapon.

Defendant complains of the court's refusal to give the following instruction: "The pointing of a unloaded gun at the prosecuting witness accompanied by a threat to shoot him, without any attempt to use it otherwise, is not an assault with a deadly weapon, and cannot sustain a conviction for an assault for want of a present ability to commit a violent injury on the person threatened in the manner attempted." Respondent says the evidence shows, as a matter of law, that this gun was a deadly weapon. We do not so interpret *People* v. *Simpson, supra,* 134 Cal.App. 646, nor *People* v. *Young, supra,* 105 Cal.App.2d 612. As we read them, neither case sanctions taking the question from the jury. But the court by the instructions it did give submitted the question to the jury in an appropriate and understandable fashion. There was no need to duplicate. (*People* v. *Hill,* 76 Cal.App.2d 330 [173

P.2d 26].) Defendant's proposed instruction might have tended to confuse the jury by injecting the concept of an ''unloaded gun'' without giving the jury assistance in deciding that question. Moreover, defendant presented this instruction to the court 10 minutes before the court began instructing the jury, despite the fact that before the trial began he was told that the court ''will entertain any suggestion from you with regard to the instructions up to the time the People's argument actually starts.'' *People* v. *Brown*, 27 Cal.App.2d 612 [81 P.2d 463], held that an instruction submitted after the time set by the trial court for the presentation of instructions was properly refused.

Under these circumstances we find no error, certainly no prejudicial error, in the refusal of the requested instruction.

 (9) *Was it error to cause defendant's sentences to run consecutively? Yes.*

For a certain prior offense defendant had been sentenced as an habitual criminal. That carries a life sentence. (Pen. Code, § 644.) In the case of conviction of two or more crimes (whether in the same proceeding or court or different proceedings or courts) ''if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term . . .'' (Pen. Code, § 669.)

It was mandatory, in the instant case, for the court to cause the terms of punishment for the two convictions here involved to run concurrently, not consecutively, with defendant's life term. Instead, the court ordered those two terms to run concurrently, as to each other, but to begin ''at the expiration of any term or terms that defendant is presently required to serve and shall run consecutive thereto.''

The state contends that it was entirely competent for the trial court to do as it did. Executive clemency in the form of a pardon or commutation of the life sentence would make it physically possible for the defendant to serve later sentences. The state cites *In re Pedrini*, 33 Cal.2d 876, 882 [206 P.2d 699], which is quite inapplicable for the statute in force at the time of the offense there involved did not, as it now does, expressly provide that other sentences must run concurrently with a life sentence. (See footnote 3 on pp. 877 and 878 of 33 Cal.2d.)

In such a case as this there is ''no need of a reversal of

the judgment or of further proceedings in the superior court. It is sufficient that this court modify the terms of the several sentences to declare that such sentences should run concurrently." (*People* v. *Tucker,* 127 Cal.App.2d 436, 438 [273 P.2d 934].)

Accordingly, the concluding clause of paragraph (3) of the judgment herein is amended to read as follows: "These terms of imprisonment shall ~~begin at the expiration of~~ *run concurrently with* any term or terms that defendant is presently required to serve ~~and shall run consecutive thereto~~." (New matter in italics, omitted matter in strikeout type.) As thus modified the judgment is affirmed; and the order denying a new trial is affirmed.

Peters, P. J., and Bray, J., concurred.