[Crim. Nos. 8615, 8616. Second Dist., Div. Two. Apr. 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EARL DAMASTIS WIMBERLY, Defendant and Appellant.

Erling J. Hovden and Ellery E. Cuff, Public Defenders, under appointment by the District Court of Appeal, Charles A. Maple and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

### Appeal No. 8616

FOX, P. J.—Defendant was charged with: (1) burglary, in that on April 21, 1962, he unlawfully entered the room occupied by Casenia Dixon with intent to commit theft; (2) a second count of burglary in that he unlawfully entered the apartment occupied by Iva B. Burkholder with intent to commit theft and rape; and (3) rape, in violation of section 261, subdivision 3, Penal Code, committed on said Iva B. Burkholder. Defendant was found guilty on count I of burglary in the first degree. The remaining counts were dismissed. Defendant was charged with, and admitted, a prior felony conviction. He was sentenced to state prison for the term prescribed by law, the sentence to run consecutively to that on the previous conviction.[1] He has appealed from the judgment and order denying his motion for a new trial.

On April 21, 1962, Casenia Dixon, 18 years of age, was due to give birth to a child in a few weeks. She lived in room 16 on the second floor of 701 South New Hampshire Street in Los Angeles. It was a three-story building with

[1]Defendant has also appealed (No. 8615) from the order revoking probation and placing in full force and effect the judgment in the prior case. This appeal is considered later in this opinion.

about 25 rooms. Casenia roomed with Joyann Harrington and another girl. Some time after midnight on April 21, Casenia and Joyann were in their room. Casenia went to sleep in approximately 30 minutes after she retired. There were no lights in the room. The windows had shades but the shades were up and the windows were open. Outside on the patio there were two big lights. One of them was shining through their window.

All of a sudden Casenia had a feeling there was someone standing over her bed. When she propped herself up on her elbows, a man ''was right in my face''—only about 2 feet away. He stared down at her and said, ''Don't scream, I'm not going to hurt you.'' She was frightened and just lay there momentarily. He started to feel over her body under the covers. In one hand he held two purses. She called Joyann and said there was a man in there. When she did this he jumped off the bed and ran out of the room.

Casenia identified defendant as the man. She had no question about his identity at all because she got a good look at him when he stared in her face and again when he looked up and had the light from the window shining in his face. When Joyann jumped out of bed, the man turned around and looked at her. He went out of the room and shut the door. Then he came back, opened the door and stood there looking at the girls. The girls screamed. Casenia did not know where the man went. Her purse had five dollars in it but nothing else of any particular value. She had a picture of what defendant looked like because she wasn't able to sleep for two weeks.

Joyann Harrington, Casenia's roommate, was also expecting the birth of a child in a few days. During the early morning of April 21, she was in bed but was awakened by a slight cry, saying ''Joy, Joy.'' She saw someone bending over Casenia's bed. She did not see the man's face but in respect to size and build defendant resembled the intruder. The man ran out the door but came back in and looked at the two girls. Joyann, however, could not see his face. She yelled and he ran again.

As the result of a somewhat similar escapade in the same vicinity at about 1 o'clock in the morning of April 25, which resulted in a telephone call to the police department, defendant was picked up by the police. They found a pair of gloves in his possession though it wasn't a particularly cold night. Defendant explained that his hands chapped sometimes and

that he wore the gloves to protect them. Later he said that he made this statement because he thought it was a better excuse than nothing at all. He said he lived at the YMCA and was out of work. He claimed that he had met a girl at 3d and Vermont and had walked her home to 4th and Mariposa. She was a brunette and her name was Sue. He didn't know her exact address as he didn't go all the way home with her. He stated he had been in the general area several times before as he knew people who lived in the neighborhood. He also said that the Friday night before—the 20th—he had been to see a woman at 9th and Normandie. Although the officer asked the name of the woman, defendant refused to give it.

Defendant was arraigned on May 17 and then declared his desire to conduct his own defense. The court's offer to appoint the public defender was declined by him.

When the case was called for trial on June 8, defendant appeared in propria persona. He declined the appointment of counsel, and, although the court explained to him the difficulties and hazards of representing himself, he insisted upon trying the case himself. Defendant asked the court for an order to permit him to use the law library in the county jail. Such an order was made. The case was continued one week to June 15. When the case was called again on June 15 for trial, defendant made a motion for a continuance for the purpose of enabling him "to properly prepare" himself for his defense. He represented that he had only had an opportunity to use the law library for a total of four hours. The court denied the continuance. After the prospective jurors had been sworn and the court had explained the nature of the case[2] and had asked them certain preliminary questions, defendant then stated to the court that he "would like to ask the court to appoint me a public defender to represent me in the remainder of this case." The trial judge indicated that he would appoint the public defender but stated that he would insist on proceeding with the trial because "there are two girls, principal witnesses, that are expecting delivery in a few days. . . ." The public defender objected to being appointed to represent defendant on the ground that there was

[2] At this point the court was advised by the deputy district attorney that Miss Burkholder, referred to in counts II and III, was not able to appear in court at that time and testify; that he had a doctor's certificate so stating. These two counts were then placed off calendar and later dismissed. The trial proceeded on count I.

inadequate time and opportunity to prepare a defense. His objection was overruled and he was appointed. In making the appointment, the court noted that this was Friday, that he had a weekend ahead and that he would give counsel additional time if such were needed.

On Monday, June 18, the impanelment of the jury was concluded and four witnesses were heard. Trial was resumed on Tuesday, June 19, at which time an additional witness was heard. Whereupon the People rested at 11:30 a.m. The public defender told the court that defendant had advised him of certain facts that tended to show that he may have an alibi and that he needed time to investigate this matter. The deputy district attorney offered no objection to a reasonable continuance but stated he wanted the case to go to the jury because the expectant mothers were going to put their children out for adoption and were planning to leave the state when that occurred. The public defender wanted the case put over for a day or two. Thereupon the court continued the trial from Tuesday to Thursday (the 21st).

When the trial was resumed on Thursday, June 21, defendant submitted an affidavit by the acting assistant chief investigator of the public defender's office in support of a motion for a continuance or mistrial. The burden of the affidavit was to the effect that by reason of the shortness of time, the lack of investigating personnel in the public defender's office and the heavy work load, it was not possible to complete the investigation of this matter until July 10. Apparently little or nothing was done in the interim to investigate due to the fact that there were other matters pending in the office. After argument, the motion for a continuance was denied as was also the motion for mistrial. The public defender then also moved to strike the testimony of the People's witnesses on the ground that he had insufficient opportunity to cross-examine them. This motion, too, was denied. Defendant did not take the stand and did not present any evidence.

 Defendant first argues that he was denied his constitutional right to due process and a fair trial because the court allowed him an insufficient amount of time in the law library and therefore his motion for a continuance should have been granted. Our Supreme Court has held that a defendant who intelligently refuses counsel and insists upon acting as his own counsel does not lose the status of prisoner and become entitled to extraordinary privileges not accorded defendants who are defended by counsel nor is he entitled to

proceed in a manner different than that permitted to attorneys. (*People* v. *Chessman,* 38 Cal.2d 166, 172-174 [238 P.2d 1001].) In *People* v. *Pearson,* 150 Cal.App.2d 811, 815 [311 P.2d 142], the court discussed a request by defendant to be taken to the law library for some 15 hours and stated, quoting the language of the *Chessman* case, "Moreover, a defendant who chooses to conduct his defense in person does so subject to the disabilities normally attendant upon the status of a prisoner." It has been held many times that the right to counsel can only be exercised in the course of an orderly procedure. (*People* v. *Thomas,* 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97].)

 From the factual picture before the court, the trial judge could reasonably draw the inference that defendant was not alone interested in access to the law library and time to use the law books in preparation of his defense, but that he was perhaps more interested in using this technique as a means of delaying the trial. He probably figured that if he could succeed in delaying the trial until these expectant mothers, who were the principal witnesses against him, had given birth to their babies, had placed them out for adoption and had departed the state, then he likely would go free because of the inability of the People to produce these material witnesses. In this connection, it is significant that defendant made no request for an opportunity to have access to the law library in the jail until the day his case was set for trial. In the circumstances it cannot be said that the trial court abused its discretion in not granting to defendant a further continuance for the ostensible purpose of giving him further time to peruse the law books. Furthermore, defendant is in no position to claim prejudice with respect to this matter because, after all, he did not continue to represent himself.

 Defendant contends that it was error to appoint counsel and not allow him adequate time for preparation. In passing on this contention consideration must be given to the procedural posture of the case and other relevant circumstances that prevailed at the time of defendant's request for appointment of counsel. The jury was in the process of being selected,[3] the case having been continued to that date a week earlier, the court having at that time urged defendant to

[3]Because of a procedural inadvertence the panel then in the box was excused and another group of prospective jurors sent in, and a new panel drawn.

accept appointment of counsel which he declined. Defendant then sought a further continuance so that he might further peruse the law books in preparation for conducting his own defense. The court denied defendant's request for a continuance. This was clearly a matter for the exercise of the trial court's discretion. And it cannot be said that the court erred in appointing counsel for defendant when a little later during the questioning of prospective jurors defendant so requested. In fact, this obviously was a benefit to the defendant for it enabled him to have experienced counsel rather than attempt to conduct his own defense. The deputy public defender objected to accepting the appointment on the ground that he would not have adequate time for preparation. It was at this point that the prosecutor advised the court that counts II and III could not then be tried because of the condition of the alleged victim.[4] This left only count I to try. The court told counsel: ''I won't push you if you need a day to study something, you can have it. I will not force you into an immediate defense, but I want to get the People's case in here because of these witnesses'' (the two girls who were the principal witnesses as to count I and who were ''expecting delivery in a few days''). The court also advised counsel that he would have the right to recall prosecution witnesses for further cross-examination if the need therefor arose. With that understanding the deputy public defender undertook the representation of the defense and the trial proceeded.

The reporter's transcript discloses that defense counsel thoroughly cross-examined the People's witnesses—particularly the two girls whose room defendant is charged with having entered. Also, the court commented that counsel had ''not been remiss'' in his cross-examination of the People's witnesses. It is not suggested that counsel did not have ample opportunity to confer with defendant.

The prosecution rested shortly after 11 o'clock on Tuesday morning, June 19. Counsel then advised the court that his client had appraised him of certain facts that tended to show that he may have an alibi or at least an alibi for a portion of the time during which the crime was committed; that he needed some time to investigate this matter. The trial was thereupon continued for a day and a half to Thursday morning, June 21. At that time counsel for defendant filed an eight-page affidavit by the acting chief investigator of the

---

[4]A fourth charge was dismissed at the preliminary hearing because the victim was not able to appear as a witness due to her confinement.

public defender purporting to delineate the matters that should be investigated[5] in this case and stating that such an investigation and report could not be completed until July 10. Counsel used this affidavit as a basis for a motion for continuance to July 10, at the same time advising the court that he expected to be away on vacation at that time and that he would not return until July 30. With the case in this posture and in view of the unusual attendant circumstances it was not an abuse of the court's discretion to deny defendant's motion for a continuance. ▮ The observation of the court in *People* v. *Thomas*, 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P. 2d 97], is here apposite. At page 131 the court stated: ". . . 'To hold that a defendant charged with crime has an absolute right to counsel of his own selection, *with unlimited right to insist upon continuances of his trial*, would be subversive of the prompt administration and execution of the laws—upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner; . . .' " (Italics added.)

▮ If at first glance it should appear that an important area of defendant's asserted defense was not fully explored, it should be remembered that it was his fault. First of all, he appeared at his arraignment in propria persona, then in the same fashion on the date set for his trial and declined the appointment of counsel on both occasions, although the trial judge urged him to avail himself of counsel's services. Had he then accepted this sage advice, his claim of an alibi could undoubtedly have been fully explored. Even in attempting to act as his own attorney he must have known the importance of producing as a witness the person who could corroborate his testimony that they were together on the evening in question and thus support his alibi. (Defendant had had recent experience in the criminal court.) If in fact he had taken Miss Larson to dinner on the evening of April 20 and spent the remainder of the evening with her, a letter to her at the apartment where she assertedly lived with her sister and brother-in-law indicating that it was important for him to establish where he was on that particular night and asking her cooperation would no doubt have met a favorable and

[5]The affidavit gave the name of the girl, and the address at which she lived, with whom defendant claimed he spent the evening of April 20 until approximately midnight.

helpful response. If perchance she had been reluctant to appear in court, defendant could have caused a subpoena to have been issued and served on her requiring her presence in court the next morning, and could undoubtedly have secured a one-day continuance for that purpose. Defendant's failure to take any of these steps justifies the inference that he was more interested in a continuance than he was in having Miss Larson contacted, particularly since he was aware that one charge had been dropped at the preliminary hearing because of the unavailability of a key witness, and that counts II and III of the information were not being then tried and were not likely to be tried because of the condition of the victim. In light of his knowledge of the impending confinement of Miss Dixon and Miss Harrington and their reported intention of leaving the state soon after the birth of their babies, he may well have reasoned that further delay would result in their being unavailable for further cross-examination in the event his counsel should request such opportunity (and which the court had promised). Hence the charge would likely have to be dismissed and he would thus go free.

After defendant's motion for a continuance was denied, he moved for a mistrial. This was denied. He then moved to strike the testimony of the People's witnesses on the ground that he had insufficient opportunity to cross-examine them. This motion was denied, also. These rulings were correct. Defendant did not take the stand and no defense was presented. Defense counsel, however, did argue the case. Defendant's motion for a new trial, based largely on the rulings we have discussed, was denied.

Defendant cites numerous cases in support of the established principle that appointed counsel should have reasonable opportunity to prepare his defense. None of the cases, however, which announce and apply this principle are sufficiently similar to the factual picture at bar to be of any particular assistance. Detailed consideration of them would therefore be unprofitable.

However, one of the cases cited by defendant, *United States* v. *Vasilick*, 206 F.Supp. 195, does state a pertinent principle. At page 199 the court said: "Whether time allowed counsel for a defendant for preparation for trial is sufficient depends upon the nature of the charge, the issues presented, counsel's familiarity with the applicable law and pertinent facts, and the availability of material witnesses."

When this statement is considered in connection with

the observation of our Supreme Court in *People* v. *Thomas*, *supra*, that "[i]t is at once apparent that the trial court must in the nature of things have some control over such matters [the appointment of counsel and granting continuances], to the end that judicial business may be dispatched in an orderly manner," it is manifest that in the factual context here presented the court did not abuse its discretion in refusing another extended continuance. It follows that the judgment of conviction should be affirmed.

## *Appeal No. 8615*

At the conclusion of the trial in No. 8616, the court took up the matter of defendant's violation of probation which had been granted on January 10, 1962, following his earlier conviction of burglary. In that case, defendant had been "sentenced to state prison for the term prescribed by law." The sentence, however, was suspended and the defendant "placed on probation for five years. . . ." No previous notice had been given defendant of this hearing nor was he represented by counsel although the public defender, who had represented him in the just-concluded trial, was present in the courtroom. After reviewing the record, and noting that defendant had again been convicted of burglary, the judge stated: "Therefore, probation is revoked, the suspension of the original sentence set aside, the original sentence is ordered in full force and effect as stated by the Court, to wit: Defendant is ordered to prison, in the State Prison, for the time prescribed by law. That is the original order of the judge. It is ordered now carried out in full force and effect."

Following this pronouncement, the deputy public defender, who had represented defendant in the trial just concluded (No. 8616), advised the court that he would like at that time to make a motion for a new trial on all statutory grounds and would like to argue the matter briefly at that time. After a brief recess the motion for a new trial and other matters relating to that case were argued. The following proceedings were then had:

"The Defendant: I would like to object at this time——

"The Court: What is that?

"Defendant: I would like to object at this time on the probation and sentencing case on the grounds that you are prejudiced because of the other case and I would like for you to withdraw yourself.

"The Court: Well, the record will show your objection. It is overruled and denied."

Defendant contends on this appeal that he was denied due process.

Pertinent guiding principles in this type of proceeding were stated in *In re Levi*, 39 Cal.2d 41 [244 P.2d 403], at page 44: "There is neither a constitutional nor a statutory right to a hearing preceding revocation of probation. (*In re Davis*, 37 Cal.2d 872, 873-874 [236 P.2d 579].) If a hearing is held, it is not governed by the rules concerning formal criminal trials. The court may revoke probation solely on the basis of the probation officer's report. (*In re Dearo*, 96 Cal.App.2d 141, 143 [214 P.2d 585].) There is no right to present witnesses. (*People* v. *Hayden*, 99 Cal. App.2d 97, 99 [221 P.2d 221].) The constitutional right to have counsel in 'criminal prosecutions' (art. I, § 13) is not applicable since a probation proceeding is not part of a 'prosecution.' (*In re Dearo, supra*, 96 Cal.App.2d 141, 143; *People* v. *Fields*, 88 Cal.App.2d 30, 33 [198 P.2d 104].)" Accord: *People* v. *Mason*, 184 Cal.App.2d 182, 189 [7 Cal.Rptr. 525].

Counsel relies particularly on *People* v. *Smith*, 196 Cal.App.2d 854 [17 Cal.Rptr. 330], for the proposition that a probationer may file an affidavit under section 170.6, Code Civil Procedure, to disqualify a judge from hearing a purported violation of probation where the judge has had no previous connection with the particular case as was the situation in the instant proceeding. The cited case has no application here for the reason that no suggestion of prejudice was made by defendant until after the entire proceeding had been concluded by the court reviewing his violation of probation, ordering the original sentence into full force and effect and remanding the defendant "to the sheriff for transmittal to the Director of Corrections," and the court had spent some time in considering another matter. Obviously such belated suggestion of prejudice was wholly ineffective. We find no violation of defendant's constitutional rights in the revocation of his previous probation and the reinstatement of the sentence that had been imposed.

The judgment in No. 8616 is affirmed. The purported appeal from the order denying defendant's motion for a new trial is dismissed.

The order revoking probation and placing in full force and effect the judgment in No. 8615 is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1963.