[Crim. No. 4640.  In Bank.  Aug. 31, 1945.]

In re WILFORD GILLIAM, on Habeas Corpus.

Wilford Gilliam, in pro. per., and Thomas O'Hara for Petitioner.

Robert W. Kenny, Attorney General, and Arthur A. Ohnimus and James O. Reavis, Deputies Attorney General, for Respondent.

SPENCE, J.—By this proceeding in habeas corpus petitioner challenges the propriety of the trial court's adjudication that he is an habitual criminal. (Pen. Code, § 644.)

The information contained three counts, respectively charging petitioner with burglary and with two prior convictions of felonies. One of the prior convictions was alleged to have been for burglary committed in Texas, for which judgment was "pronounced and rendered and the defendant served a term of imprisonment" in the Texas State Prison. The other prior conviction was alleged to have been for "box car robbery, a felony," for which "judgment [was] pronounced and rendered" and "defendant . . . was imprisoned in a Federal Prison known as 'U.S.I.R.' at Chillicothe, Ohio." The last-mentioned prison is the United States Industrial Reformatory "used for the confinement of male persons who have been or shall be convicted of offenses against the United States, . . . and sentenced for terms of imprisonment for more than one year, with or without hard labor, except those who have been convicted previously of an offense punishable by imprisonment for more than one year, and except also those convicted of treason, murder in the first or second degree, rape or arson, and those sentenced to life imprisonment." (18 U.S.C.A. Supp. § 831, p. 261.) Upon arraignment, petitioner pleaded guilty to the principal charge of burglary, and admitted the two prior felony convictions and the service of the terms of imprisonment as alleged. Following such plea and admissions, the trial court determined the principal crime to be burglary in the second degree, adjudged petitioner an habitual criminal as required by law (Pen. Code, § 644), and sentenced him to State Prison "for the term prescribed by law on Counts One, Two and Three of the information."

Petitioner claims to be illegally deprived of his liberty and in support thereof he argues that the trial court erred in these respects: (1) in holding his conviction of "box car robbery" and imprisonment therefor to be a "qualified prior"

within the provisions of section 644 of the Penal Code; and (2) in adjudging him to be an habitual criminal without taking evidence on the point. The cited code section, so far as pertinent to petitioner's contentions, reads as follows: "Every person convicted in this State of any felony who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any State prison and/or Federal penitentiary, either in this State or elsewhere, of the crime of . . . burglary . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the State prison for life."

Petitioner first maintains that the prior conviction for "box car robbery" should not be considered in fixing his status as an habitual criminal because that offense is not one of those enumerated in section 644. The record herein includes a certified copy of the writ of commitment which was issued in the matter of the designated offense and which recites that petitioner "was indicted . . . for having . . . violated sec. 409 of the U.S. Code—robbery of interstate shipments of freight, etc., contrary to the statutes of the United States in such case made and provided; and the said accused was convicted of said charge. . . ." Referring to said section 409 captioned "Larceny, etc., of goods in interstate or foreign commerce; penalty" (18 U.S.C.A., p. 270), the following provision is pertinent: "Whoever . . . shall enter any [railroad] car [containing interstate or foreign shipments of freight or express] with intent . . . to commit larceny therein . . . shall . . . be fined not more than $5,000, or imprisoned not more than ten years, or both. . . ." Our statutes contain a correlative provision in section 459 of the Penal Code where it is provided that "every person who enters any . . . railroad car . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." At the time for sentence, petitioner was interrogated as to the nature of the two prior convictions and he stated: "They were for Burglary." As so admitted by petitioner, his offense against the federal statute manifestly comes within the import and intent of section 644, expressly specifying burglary among the enumerated crimes for consideration by the trial court in passing judgment. Upon such basis this case is distinguishable from *People* v. *Lohr,* 28 Cal.App.2d 397 [82 P.2d 615], cited by petitioner, because in that case the record furnished "no assistance" as

to which section of the federal act there involved defendant had transgressed. Accordingly, it was said there at page 399: "We must therefore assume that defendant was convicted of the violation of that portion of the . . . Act which" was the least offense thereunder, one not comparable with any of the enumerated felonies in said section 644. Likewise the record before us does not involve an "unidentified" crime as was the situation in *People* v. *McChesney*, 39 Cal.App.2d 36 [102 P.2d 455]. Rather, the record here affirmatively establishes that the prior conviction in question does fulfill the statutory requirement (Pen. Code, § 644).

With reference to this same prior conviction, petitioner next takes the position that the term of imprisonment served therefor does not come within the contemplation of section 644 because, he contends, that section of the Penal Code is based upon the serving of a term in any state prison or federal penitentiary, and not upon the serving of a term in a federal reformatory. In this connection he argues that a "reformatory" is distinguishable from a penal institution such as a "prison" or "penitentiary" because the primary purpose of a reformatory is to educate, discipline and reform the persons confined therein rather than to punish them for their crimes. But this attempted general distinction, based merely upon the name which may be given to an institution, is of but little, if any, assistance in solving the question presented, for under enlightened modern practices the object of reformation may be as characteristic of the scheme of management of a so-called prison or penitentiary as it is of a reformatory. (Webster's New International Dictionary (2d ed.), pp. 1810, 1968.) Rather it is the character of the institution and its inmates together with the nature of the proceedings leading to confinement therein which determine its status in relation to the language of the code section under consideration. The word "penitentiary" may be used in a sense sufficiently broad to include a "reformatory" (50 C.J. § 3, Penitentiary, p. 330; *State* v. *Vaughn*, 15 Okla.Cr. 187 [175 P. 731]), and so it would appear here with reference to the federal reformatory wherein petitioner was imprisoned.

As declared by federal statute (18 U.S.C.A. § 831, *supra*) the "United States Industrial Reformatory" at Chillicothe, Ohio, is used for the confinement of male persons who have been convicted of offenses against the United States,

with certain exceptions, and who have been sentenced for terms of imprisonment for more than one year. Said statute also provides that "it shall be sufficient for the courts *to sentence* said class of offenders *to imprisonment in the penitentiary without specifying the particular penitentiary or the United States industrial reformatory,* and the imprisonment shall be in such *penitentiary or the United States industrial reformatory* as the Attorney General shall from time to time designate." (Italics ours.) The provision for general sentence by the court of the designated class of offenders and for the attorney general's exercise of discretion in determining the place of imprisonment clearly indicates that the above-mentioned reformatory was nothing more or less than a particular type of penitentiary under the federal scheme for confinement of prisoners. Under similar considerations but involving the additional factor of an age limitation not here present, a state reformatory for the imprisonment of persons between the ages of sixteen and twenty-five years was held to be a "sub-prison or penitentiary" with respect to application of the Habitual Criminal Act. (*Hudson* v. *State,* —— Okla.Cr. —— [145 P.2d 774, 776].) Moreover in this state, it has been held that "imprisonment in the men's state reformatory [of Nebraska] . . . constitutes the serving of a term in a state prison within the meaning of" section 644 of the Penal Code. (*In re Brady,* 5 Cal.2d 224, 225 [53 P.2d 945].) In contrast are proceedings under the Juvenile Court Law of this state (Welf. & Inst. Code, §§ 550 et seq., Stats. 1937, ch. 369, p. 1021), whereby "a person under the age of twenty-one years" is adjudged to be "a ward of the juvenile court" and is committed as such ward to a state industrial school for a period of time which may extend until he attains his majority. This precise situation is discussed in *Ex parte Nichols,* 110 Cal. 651 [43 P. 9], where the Whittier Reform School is distinguished from a state prison because as a correctional institution for its inmates, its object "is not punishment, but reformation, discipline and education." The distinction is further clarified in *People* v. *DeFehr,* 81 Cal.App. 562, at page 574 [254 P. 588], where it is held that commitment to a reform school under the Juvenile Court Law of this state "does not involve a criminal prosecution or a judgment of sentence." The federal reformatory here involved is obviously not at all akin to a training school for juvenile offenders who are committed to the custody of such school but who are not confined therein

under sentence of imprisonment. This reformatory is defined as a place "for the confinement of male persons," regardless of age, who have been "sentenced for terms of imprisonment for more than one year." Despite the fact that this institution is called a reformatory, it is clearly a penal institution established for the usual purpose of imposing punishment under sentence of imprisonment as well as for the purpose of effecting the reformation of the inmates. Petitioner's age at the time of sentence—nineteen years—is not a governing factor here in determining the character of the federal reformatory for the purposes of the habitual criminal statute of this state. It would be unreasonable to hold that confinement under sentence of a man twenty-two years of age in such reformatory constitutes service of a term of imprisonment in a "federal penitentiary" while like confinement under sentence of a minor is not to be similarly regarded. The federal statute in question furnishes no ground for such distinction as to inmates of the reformatory on the basis of age, and a reasonable interpretation of section 644 of the Penal Code warrants the conclusion that petitioner's service of sentence in such reformatory constitutes "the serving of a term in a federal penitentiary" within the meaning of that section. (*Cf. People* v. *Salisbury,* 29 Cal.App.2d 697 [85 P.2d 456].)

Petitioner finally argues that no proof was made that he had actually served terms of imprisonment on the prior convictions, and that the trial court's adjudication of his status as an habitual criminal may not therefore be sustained. (*In re Bertrand,* 61 Cal.App.2d 183 [142 P.2d 351].) A review of the proceedings had at the arraignment and sentence of petitioner readily distinguishes the record here from that prevailing in the cited case and demonstrates that petitioner's point of objection is without merit. By Counts II and III of the information petitioner herein was expressly charged with two prior convictions of felony and with the service of a term of imprisonment on each of said prior convictions. On arraignment, petitioner pleaded guilty to "count one, count two and count three." Later at the time of sentence, petitioner, in response to a question as to how long he had followed a certain trade, answered: "I followed that occupation after I left the reformatory." Also pertinent to the point of petitioner's previous penal terms is the following testimony: "Q. How many times have you been convicted of a felony?

A. Two. Q. And what were they for? A. They were for Burglary. One was committed and the other one I was supposed to plead guilty to a charge, and it was carried through.'' Then, as authorized by law in pursuance of petitioner's plea and admissions of prior convictions and imprisonment as charged, the trial court formally adjudged petitioner to be an ''habitual criminal, he having suffered two prior confinements.'' (*In re Boatwright*, 216 Cal. 677 [15 P.2d 755].)

Petitioner's reliance on the Bertrand case, *supra*, is of no avail because there, in contrast to the present record, the information contained ''no allegation that defendant had served terms of imprisonment on any of the prior convictions''; his admission on arraignment that ''he had suffered the prior convictions 'charged in the information' '' was ''only an admission that he had suffered said prior convictions and not that he had served terms of imprisonment thereon''; ''no proof was made to the court that he had ever served such terms of imprisonment''; ''the trial court did not adjudge him to be an habitual criminal''; and in consequence of these deficiencies in the record, ''the Board of Prison Terms and Paroles acted without authority of law in fixing his term at life imprisonment.'' (61 Cal.App.2d 184-185.) A complete answer to petitioner's argument is found in the recent case of *People* v. *Stone*, 69 Cal.App.2d ——, at page —— [159 P.2d 701]: ''Contention that the trial court's judgment is erroneous because it did not take evidence upon the question of the prior convictions is utterly without merit. It is not an arbitrary judgment of the court when it adjudicates a prisoner to be an habitual criminal after he admits in open court two prior convictions for felonies and service of prison terms therefor at the time of his pleading guilty to the felony charged in the pending accusation. The confession of a prisoner at the bar of his guilt as charged as well as of the truth of the allegation of prior convictions is, in the absence of insane delusions, most satisfactory evidence upon which to convict and will support a judgment that he is an habitual criminal. (*People* v. *Nicholson*, 34 Cal.App.2d 327 [93 P.2d 223]; *In re Boatwright*, 216 Cal. 677 [15 P.2d 755]; *People* v. *Dawson*, 210 Cal. 366 [292 P. 267]; *People* v. *Birdsell*, 6 Cal.App.2d 749 [45 P.2d 378].)''

The writ is discharged and petitioner is remanded to custody.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.