[Crim. No. 4606. In Bank. Dec. 10, 1946.]

In re JOSEPH HARINCAR, on Habeas Corpus.

Joseph Harincar, in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHAUER, J.—By application for writ of habeas corpus petitioner attacks an adjudication that he is an habitual criminal. He contends that the trial court erroneously found that he had suffered three prior convictions of felony in other states, whereas two of the convictions were of offenses which, if committed in California, would be only misdemeanors. Under the authority of *In re McVickers, ante,* p. 264 [176 P.2d 40], and *In re Seeley, ante,* p. 294 [176 P.2d 24], if this contention can be upheld by reference to the judicially noticed law of the states in which the priors were suffered, or to authenticated copies of the informations and judgments of prior convictions, petitioner can secure relief in this proceeding. However, as hereinafter pointed out, it appears that petitioner is an habitual criminal with two prior convictions of felony, serving a life sentence, that he has been released on parole and, therefore, that he is entitled to no relief except a formal adjudication of his status.

Petitioner was accused by information of the crime of forgery committed in Los Angeles on July 16, 1936. The information alleged that he had been three times previously convicted of felonies in other states and had served a term of imprisonment in a state prison for each conviction. Petitioner pleaded guilty to the charge of forgery and admitted the prior convictions as alleged. Counsel for petitioner stated to the trial court that the crimes of which petitioner had been previously convicted ''were nothing but petty larcenies under our laws.'' As to one of the priors this statement is correct. The judgment of the trial court, entered on October 1, 1936, recited the three asserted prior convictions and adjudged that petitioner was an habitual criminal and that he should be imprisoned in the state prison at Folsom for the term of his natural life.

The three prior convictions alleged, admitted as charged, and recited in the judgment are of ''Larceny, a felony,'' in Iowa on March 10, 1920; of ''Receiving Stolen Property, a

felony," in Minnesota on September 16, 1925; and of "Grand Larceny and Prior Conviction of Felony, a felony," in Minnesota on February 4, 1928. In 1936, when petitioner committed and was convicted of the primary felony of forgery, section 644 of the Penal Code (as am. Stats. 1935, p. 1699) provided that "Every person convicted in this state of any felony who shall have been previously twice convicted [of enumerated felonies, including grand theft and feloniously receiving stolen goods] upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole until he shall have served a minimum of at least twelve years. Every person convicted in this state of any felony who shall have been previously three times convicted [of enumerated felonies, including grand theft and feloniously receiving stolen goods], upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole. . . ."

After the time for appeal had expired petitioner moved the trial court to vacate the *judgment of conviction*. He apparently did not distinguish between the formal judgment of conviction and the ancillary determination (affecting not guilt but only length of imprisonment and eligibility to parole) of habitual criminal status. In pressing the motion to vacate the judgment of conviction, however, he contended, as he does in this proceeding (and as he had at the trial), that the two convictions of crimes denominated "Larceny" adjudicated only that he had committed acts which, if committed in this state, would be petty theft. His motion was denied, he appealed, and the order denying the motion was affirmed on the authority of *People* v. *Lumbley* (1937), 8 Cal.2d 752, 760 [68 P.2d 354], and *People* v. *Moore* (1935), 9 Cal.App.2d 251, 255 [49 P.2d 615]. (*People* v. *Harincar* (1942), 49 Cal.App.2d 594 [121 P.2d 751].) The attack in the proceeding now before us is not upon the judgment of conviction but is directly and exclusively levelled at the subsidiary determination of habitual criminal status.

Petitioner concedes that the second alleged prior conviction

("Receiving Stolen Property" in Minnesota) was of a crime which is in substance the same offense as the crime denominated "feloniously receiving stolen goods" in section 644 of the Penal Code.[1] Since the commencement of this proceeding respondent has conceded that the third alleged prior conviction ("Grand Larceny" in Minnesota in 1928) was not of an offense which, if committed in this state, would constitute a felony enumerated in section 644.[2]

The first alleged prior conviction, as stated above, was of "Larceny, a felony," in Iowa in 1920. The applicable Iowa statute (Iowa Code, 1897, § 4831) provided that "If any person steal, take and carry away of the property of another any money, goods . . . [etc.], he is guilty of larceny"; larceny of property of value more than $20 was a felony punishable by imprisonment in the penitentiary; larceny of property of value less than $20 was a misdemeanor punishable by fine and imprisonment in the county jail. From the record before us (including copies of the Iowa indictment and judgment) it appears that petitioner was specifically charged with and convicted of larceny of certain described goods of the alleged and admitted value of $81. At the time petitioner committed and

---

[1]In 1925, when petitioner suffered this prior conviction, whether the California crime denominated "receiving stolen goods" was a felony depended upon the punishment imposed. (Pen. Code, § 496 [Stats. 1907, p. 301].) Petitioner, then an adult who (as hereinafter appears) had been previously convicted of felony, was punished by imprisonment in the Minnesota state reformatory. It is not disputed that "the character of the institution and its inmates together with the nature of the proceedings leading to confinement therein" determine the status of the reformatory as a "state prison" within the meaning of section 644 of our Penal Code. (In re Gilliam (1945), 26 Cal.2d 860, 863 [161 P.2d 793].)

[2]In Minnesota the offense denominated "grand larceny" was divided into degrees; to "steal or unlawfully obtain . . . property of any value by taking the same from the person of another" or from a building was grand larceny of the second degree. (Minn. Gen. St., 1923, § 10363.) In the absence of other proof the trial court was bound to assume that petitioner suffered the prior conviction for the least offense punishable under the statute. In admitting the prior as charged petitioner, of course, admitted no more than was charged. (In re McVickers, ante, p. 264 [176 P.2d 40]; People v. Lohr (1938), 28 Cal.App.2d 397, 399 [82 P.2d 615]; People v. McChesney (1940), 39 Cal.App.2d 36, 41 [102 P.2d 455].) The essential elements of such offense are not necessarily those of the California crime of "grand theft" (property of value exceeding $200 [Pen. Code, § 487]). And from the record before us (including copies of the Minnesota information and judgment) it appears that petitioner was charged with, admitted, and was convicted of the unlawful taking from a building of property of a value of only $6.20.

was convicted of the Iowa offense (1920), the California offense denominated "grand larceny" was committed "When the property taken is of a value exceeding fifty dollars." (Pen. Code, § 487 [Stats. 1919, p. 235]. In 1923 section 487 was amended [Stats. 1923, p. 271] to increase the monetary dividing line between grand and petty larceny to $200.) It thus appears that in Iowa petitioner was charged with and convicted of an offense the adjudicated elements of which met or exceeded the minimum essentials of the then California crime of grand larceny, but which adjudicated elements do not meet or exceed the requirements of the present California crime of grand theft.

The problem, therefore, is substantially the same as if petitioner were contending that a conviction of grand larceny of $81 in California in 1920 is not, since the 1923 amendment of section 487 of the Penal Code, a proper basis for adjudication of habitual criminality. Such a contention was rejected in *People* v. *McConnell* (1937), 20 Cal.App.2d 196, 197 [66 P.2d 720], where the District Court of Appeal said, "section 644 of the Penal Code, contains no provision that the prior felony must be such an offense at a subsequent date of prosecution. The date of conviction, therefore, is the time to be considered in determining whether or not the offense was a felony at the subsequent trial." The New York law is similarly construed. (*People ex rel. Kruger* v. *Snyder* (1941), 261 App.Div. 352 [25 N.Y.S.2d 644].) (And the rule appears to be the same where the statute making the prior conduct criminal has been repealed at the time of the commission and conviction of the subsequent, primary offense. *People* v. *Barwick* (1936), 7 Cal.2d 696, 699 [62 P.2d 590]; *In re Jerry* (1940), 294 Mich. 689 [293 N.W. 909, 132 A.L.R. 89].)

█ It therefore appears that petitioner at the time he was convicted of the primary crime of forgery was an habitual criminal who had been twice, not three times, previously convicted of felonies enumerated in section 644 of the Penal Code. After this proceeding was instituted section 644 of the Penal Code was amended and section 3048.5 was enacted. (Stats. 1945, p. 1747.) The latter section provides that one who has been adjudged an habitual criminal prior to its enactment, whether twice or three times previously convicted, and who has been convicted of a primary offense other than certain felonies (of which certain felonies forgery is not one)

enumerated in section 644 as amended, "shall be deemed to be imprisoned for life and shall be eligible for release on parole after he shall have served a minimum term of seven calendar years." Pursuant to the authorization of this section petitioner has been released on parole. Since petitioner remains "constructively a prisoner . . . he is not free from legal restraint by the penal authorities and habeas corpus is the appropriate means for testing the legality of that restraint. [Citations.]" (*In re Marzec* (1945), 25 Cal.2d 794, 797 [154 P.2d 873].) But the application of section 3048.5 of the Penal Code to one whose primary offense is forgery is the same, whether he has suffered two or three prior convictions. Petitioner, serving a life sentence, is not entitled to be released from the restraint of parole. It appears that the Adult Authority has recognized that, as a matter of law, at the time of his conviction of the primary offense petitioner had suffered two but not three previous convictions within the purview of section 644 as it then read.

As petitioner appears to have been accorded every right to which he has shown himself entitled, the writ is discharged and he is remanded to the custody of the Adult Authority, subject to his status on parole.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

SPENCE, J.—I concur in the judgment remanding petitioner "to the custody of the Adult Authority, subject to his status on parole." I further agree with the conclusions that "Petitioner, serving a life sentence, is not entitled to be released from the restraint of parole," and that he has "been accorded every right to which he has shown himself entitled."

When petitioner commenced this proceeding on habeas corpus, he was not on parole but was serving a life sentence in the state prison as an habitual criminal. Since the commencement of this proceeding, he has been released on parole under the authority of section 3048.5 of the Penal Code, enacted in 1945. (Stats. 1945, ch. 934, p. 1747.) The effect of that section was to make petitioner eligible for parole after serving seven years, regardless of whether he had suffered two or three prior convictions. As petitioner is now unquestionably eligible for parole under the provisions of that section and as he has been released on parole pursuant thereto, it appears unnecessary to determine, as the majority opinion purports

to do, what may have been the *effect* of the judgment of the trial court upon his eligibility for parole under the law applicable prior to the enactment of section 3048.5.

Petitioner, however, originally sought, and still seeks by this proceeding on habeas corpus, to nullify the portion of the judgment adjudicating his status as an habitual criminal. As it does not affirmatively appear from the face of the record in the criminal proceeding in which the habitual criminal adjudication was made that the trial court was without jurisdiction to make such adjudication, I believe petitioner should be denied such relief for the reasons stated in my dissenting opinions in *In re McVickers, ante,* p. 264 [176 P.2d 40], and *In re Seeley, ante,* p. 294 [176 P.2d 24]. While the majority opinion denies such relief, I believe that the majority opinion should have confined the inquiry to the face of the record in the criminal proceeding in arriving at the conclusion that petitioner was not entitled thereto.

Edmonds, J., and Traynor, J., concurred.