J. Irwin Shapiro, J.
Upon this application for a writ of habeas corpus relator alleges that “ although as a matter of law and record relator is only a first * * * felony offender * * # he is detained under a third * * * felony offender sentence ”, awarded October 15, 1954 whereunder the County Court of Nassau County committed him to Sing Sing Prison for an indeterminate term of not less than 5 nor more than 10 years for the crime of forgery, second degree, whereof he had theretofore been convicted upon his plea of guilty. It appears from the return that relator is in respondent’s custody under the terms of an order made April 11,1963 by the Supreme Court of Kings County, whereby the Warden of Clinton Prison — where relator was then confined — was directed to deliver him into respondent’s custody so that the prisoner might attend and participate in a hearing appointed to be had on a coram nobis type proceeding pending in the court which made the order. Consequently, the cause for his imprisonment in Clinton Prison is the subject matter of the inquiry initiated by this writ. Consideration of that matter is deferred temporarily, however, because of a suggestion that relator was paroled under the 1954 sentence on or about May 24, 1962 to commence service of a later sentence pronounced May 18, 1962 by the County Court of Nassau County for the crime of forgery, second degree, of which he had been convicted in May of 1961, by the verdict of a jury. The fact, if it be a fact, that the relator has been paroled under the sentence challenged by this writ raises the threshold question whether, in that event, he is “ restrained in his liberty ’ ’ within the meaning of the law (CPLR, §§ 7002, 10003). If so, the legality of his restraint may be tested by habeas corpus and determined by reference to the period for which relator could lawfully have been sentenced for the crime of which he was convicted (People ex rel. Kern v. Silberglitt, 4 N Y 2d 59, 61), upon a correct adjudication of his prior-offender status (People ex rel. Newman v. Foster, 297 N. Y. 27; People ex rel. Carollo v. Brophy, 294 N. Y. 540; People ex rel. La Placa v. Murphy, 277 N. Y. 581) or the existence of other good cause for any increased punishment imposed (People ex rel. Milton v. Jackson, 297 N. Y. 708). The court has not been cited to, nor has it found, any New York case directly addressing the primary issue involved,
*507 The reasoning of some of the divided authorities that have considered the question brushes aside artificial technicalities, faces realities, evaluates the compulsions and restraints exercised by the parole and reaches a determination on the merits of the individual case. A determination here however requires established or agreed facts and unless counsel stipulate the facts and agree to a determination thereon, the court must proceed with the hearing which it previously directed. In either case, an expression of the court’s views of the applicable law will afford counsel some guidance in preparation for the final action to be taken herein.
Most of the facts are undisputed. Concededly, the 1954 sentence in Nassau County followed relator’s apparently regular arraignment on an information alleging that he had previously been convicted, in Kings County, of two felonies set forth therein, his acknowledgment that he was the person named therein, his waiver of delay in sentence and his negative response when asked whether he had legal cause to show why sentence should not be imposed and after he was directed to give his attention to the court, whereupon the presiding Judge’s utterances went as follows:
‘ ‘ the court : Zangrillo, the Court has carefully considered your case, has talked with your attorney, and the Court has gone over the probation report. You stand convicted before this Court of the crime of forgery in the second degree. Unfortunately there is very little to be said for you. Your record is not good.
“ The sentence of the Court is that you be confined in Sing Sing State Prison for an indeterminate term, the minimn-m of which shall be not less than five years and the maximum not more than ten years.”
There is no doubt that the judgment of the court was executed and the defendant committed thereunder, but no copy of the commitment has been presented to the court on this application although it might have some meaningful bearing upon the practical interpretation attached to the sentence at the time when it was pronounced.
It is further conceded that, as the outcome of coram nobis type proceedings thereafter brought by the relator, the Supreme Court, Kings County, on October 19, 1962 and June 28, 1963 respectively, vacated and set aside the pleas of guilty upon which Zangrillo had been convicted and the sentences imposed thereon; that he was rearraigned and, in each case, pleaded guilty of the same lesser felony as originally and that in the one *508 case (571/1945) sentence was suspended during his good behavior whereas, in the other (2075/1946), he received an indeterminate sentence to Sing Sing Prison but execution thereof was suspended. These dispositions also destroyed the basis upon which the relator had been adjudicated a fourth offender, and sentenced accordingly, upon the previously noted second conviction of forgery, second degree, in the County Court of Nassau County.
As a result, his motion for resentence in Nassau County as a third offender was granted on the District Attorney’s consent and, accordingly, the fourth offender sentence was set aside on February 1, 1963 and the court thereupon sentenced him “as a prior felony offender ” to Sing Sing Prison for a term of not less than 10 nor more than 20 years. There is no suggestion that the parole granted under the 1954 sentence was in any wise affected by the resentence just referred to.
This application is resisted by the District Attorney of Nassau County on the grounds (1) that relator should be relegated to a cor am nobis type remedy in the County Court of Nassau County for resentence on his 1954 conviction and this court should not, therefore, in this proceeding, remand him to the custody of the. Nassau County authorities for such purpose (relator’s motion for resentence has been pending in that court since July 23, 1963) and (2) that the record of the proceedings on the 1954 sentence shows that he was not sentenced as a third offender, the term actually meted out being proper for a first offender (Penal Law, §§ 888, 2189). The latter phase of the argument is based on an apparently unfounded assumption that the County Court either made no adjudication in the proceedings had on the information in October of 1954 or that it overlooked the statutory mandate that defendant be sentenced according to his prior offender status, as then adjudicated (Penal Law, § 1941; People v. Shaw, 1 N Y 2d 30, 35). Without evidence of any such irregularity, however, the presumption to the contrary thwarts either assumption and makes manifest the desirability of having an extract of the minutes in this record.
The questions of law may now be considered within the framework of the known facts and the possible factual issues.
On the foundational issue — whether a parolee may test the legality of his restraint thereunder by a writ of habeas corpus — the Oklahoma court has laid it down that: “ The object of the writ * * * is to relieve the petitioner from illegal restraint or unlawful imprisonment, and if this release is accomplished,. and the petitioner is not held in actual custody at the time of the hearing, there is nothing for the court to adjudicate ’ ’ *509 (Ex parte Davis, 11 Okl. Cr. 403, 404). Accordingly, the questions intended to be raised will become moot and the petition will be dismissed if it appear that the prisoner has accepted a release on parole after applying for the writ (Ex parte Kirk, 16 Okl. Cr. 722). The Oregon court holds that habeas corpus does not lie “in cases of constructive custody. * * * When a convict is free to present himself * * * and, in effect, say ‘ habeo corpus ’, there seems little common sense in directing a writ habeas corpus to some parole officer whose only authority to take physical custody of the parolee is dependent upon breach * * * of the conditions of his parole” (White v. Gladden, 209 Ore. 53, 64). The Texas court has likewise sustained a dismissal of the writ over the petitioner’s contention that he was under restraint by the terms of his parole (Ex parte Dumas, 137 Tex. Cr. 524); see, also, to the same effect the Minnesota case of State ex rel. Ferrario v. Rigg (259 Minn. 565). Although it has been said — justly at the time — that the courts have paid very little attention to the particular conditions imposed upon the parolee (Ann. 148 A. L. E. 1243, 1248) that is no longer the case.
California now holds the view that “ a prisoner upon parole * * if is constructively a prisoner under sentence in the legal custody and under the control of the Department of Correction. Accordingly, he is not free from legal restraint by the penal authorities and habeas corpus is the appropriate means for testing the legality of that restraint ” (Matter of Marzec, 25 Cal. 2d 794, 797). The principle thus enunciated has been invoked to support a parolee’s recourse to the writ as a means of challenging the felony status of three crimes of which he had admittedly been convicted prior to his adjudication (and life sentence) as an habitual criminal, upon his later conviction of forgery (Matter of Harincar, 29 Cal. 2d 403) and to reject a suggestion that a proceeding initiated by the writ is rendered moot by the relator’s subsequent release on parole (Matter of Bandmann, 51 Cal. 2d 388) but contra, see McGloin v. Warden (215 Md. 630, 631) which holds that habeas corpus is unnecessary because ‘ ‘ there are other means available to raise questions as to the legality of a sentence.”
Florida has held that “ [t]ke parolee, although at large while on parole, is a prisoner no less than a prisoner physically confined. He is enduring compulsory expiation of an offense. He is under daily personal restraint. He is at all times answerable to prison system officials for his conduct. Such officials have authority to greatly circumscribe his freedom of choice and action.” After expressing this view, the court characterized *510 parolees as “trustees outside prison walls, as it were” and noted, in detail, the particular restraints laid down in the case before it. It concluded that the curtailment thereby effected was such ‘1 restraint of freedom of action and choice and decision ” as to warrant the application for relief through the medium of the writ (Sellers v. Bridges, 153 Fla. 586, 588). See, also, Ex parte Bosso (41 So. 2d 322 [Supreme Ct., Fla., Div. A, June 24, 1949]) sustaining a probationer’s use of the writ to challenge a sentence embodying an illegal order placing him on probation.
In another connection, New York has expressed the same view saying “ he is in a prison still — a prison without walls. That is, he is permitted to serve his sentence outside of the prison walls.” (People ex rel. Rainone v. Murphy, 1 N Y 2d 367, 373.) The Federal jurisdiction is the most recent convert.
In Jones v. Cunningham (371 U. S. 236) the question was “ whether a state prisoner who has been placed on parole is 1 in custody’” within the meaning of the Federal habeas corpus provisions (IT. S. Code, tit. 28, § 2241). The court answered the question in the affirmative, on the ground that under applicable State law “ the custody and control of the Parole Board involve significant restraints on petitioner’s liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally ’ ’ and, after particularizing those restraints, pointed out that ‘ ‘ a single deviation, however slight ” might bring him to “be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime ” (p. 242). And since a New York parolee remains, while thus on parole, “ in the legal custody of the warden of the prison from which he is paroled, until the expiration of the maximum term specified in his sentence ” (Correction Law, § 213) his release thereon does not render moot an appeal from a Federal habeas corpus proceeding conducted prior thereto (United States ex rel. Sadness v. Wilkins, 312 F. 2d 559). The principle maintained by the California, Florida and Federal jurisdictions is in harmony with New York’s posture in this general area (see, e.g., People ex rel. Brown v. Johnston, 9 N Y 2d 482, 484-486) and will be applied to the facts, as ultimately resolved, in this case.
If it be established or conceded that the relator was, in fact, paroled on the 1954 sentence on May 18, 1962, the specific provisions of the Parole Board’s determination accordingly, including the terms and conditions of the parole should be established by authentic records or otherwise made to appear at length, and *511 in detail, for it is manifestly difficult to conceive what “ significant restraints ” may be placed on the liberty of one who is granted parole to commence service of a sentence imposed upon a subsequent conviction of another crime and kept in detention in execution of the later judgment. It may be that some deviation, “however slight”, could cause revocation of relator’s parole whereas the consequences of the same infraction would be distinctly less severe to a different offender, convicted of and serving time for only one crime and therefore susceptible merely to the disciplinary measures ordinarily employed in such cases. On the other hand, should it prove that the so-called parole is purely nominal and has been granted so as to provide a device through which petitioner is enabled to run out the unexpired maximum of his 1954 sentence and give him the benefit of concurrent service of the term imposed in 1962 (corrected in 1963), it is difficult to imagine him in ‘1 constructive ’ ’ custody but his actual detention under the almost purely formal parole is certainly no less a restraint than would be placed upon him if circumstances permitted his physical release from prison. However, if the eventual outcome bears out relator’s claim to a right to relief by the writ, it will not be so far-reaching as to accede to his request for an adjudication that the Nassau County judgment of 1954 is ‘1 void ’ ’.
Relator’s contention “ that when the 1945 and 1947 convictions were vacated, the sentence * * * on October 15, 1954 as a Multiple Felony Offender was void and therefore the judgment ”, attempts a nice distinction between what he perceives to be the consequences of the vacatur of the prior convictions in this case and the exposure of the inadequacy of prior convictions to support an asserted recidivist status in other cases. “ He apparently did not distinguish between the formal judgment of conviction and the ancillary determination” (Matter of Harincar, 29 Cal. 2d 403, 405, supra). “ Although the sentence is sometimes said to be the judgment of the court * ° * ‘ the judgment embraces the adjudication of guilt of the crime charged and the penalty imposed or sentence.’ (People v. Sullivan, 3 N Y 2d 196, 198.) ” (People ex rel. Emanuel v. McMann, 7 N Y 2d 342, 344; see, also, People ex rel. Vischi v. Martin, 8 N Y 2d 63, 65.) Consequently, “ [e]ven if it were to be held that the sentence was void * * * the conviction on defendant’s plea was good ” (People ex rel. Miles v. La Vallee, 9 A D 2d 815). For “ [w]hen an improper sentence is the sole basis of the complaint, no vacatur of the judgment of conviction or adjudication is necessary, since justice may be done by correction of the sentence ” (People v. Sullivan, 3 N Y 2d 196, 199) and *512 in such eases “ [tj lie sole relief * * * to which a defendant is entitled is to be remanded to the sentencing court and to be resentenced on his plea of guilty” (People ex rel. Emanuel v. McMann, 7 N Y 2d 342, 344-345, supra; People ex rel. La Shombe v. Jackson, 7 N Y 2d 345, 347). If that court “ erred in adjudicating a defendant to be a prior felony offender, a vacatur of the adjudication carries with it a vacatur of the sentence ’ ’ (People v. Sullivan, supra, p. 199). The plain rationale is that as between the two, the status aspect is the major feature of the adjudication in that it is the predicate of the sentence and, therefore, an erroneous adjudication of the status requires correction even though the same punishment could have been given upon a proper adjudication of the status. The defendant is entitled to be “ returned to the status existing prior to the adjudication” (People v. Sullivan, supra, p. 199; see, also, People v. Shaw, 1 N Y 2d 30, 34; People ex rel. Stevens v. Jackson, 283 App. Div. 3, 8) and to be resentenced in that status,* but not to an adjudication that the 1954 judgment was void. The fact that the records of his previous convictions have been “ wiped out” would entitle him to resentence under the 1954 conviction, but not to his discharge, if that were the only cause for his imprisonment (People ex rel. Sloane v. Lawes, 255 N. Y. 112, 118-119; People ex rel. Branton v. Jackson, 6 A D 2d 916, affd. 6 N Y 2d 784; People ex rel. Benham v. Conboy, 35 Misc 2d 195, 196; People v. Manasek, 35 Misc 2d 228, 229-230; People v. Neddo, 32 Misc 2d 109).
Unless the parties enter into a stipulation with respect to all of the requisite matters above indicated, testimony will be taken.

 In People v. Begue (1A D 2d 289, 293-294) (coram nobis), the Third Department noted that defendant had received a suspended sentence and, instead of directing resentence, directed that the records of the convicting court be corrected to show that, at the time of sentence, the defendant was a second (instead of a third) offender.
In People v. Gifford (2 A D 2d 642, 643) the same court noted that “ [tjhough the same punishment could be imposed for a second offense as for a third offense, the defendant was entitled to be sentenced as a second offender rather than as a third offender.” This too, was a coram nobis proceeding. The order appealed from was reversed with a direction that defendant be resentenced on the conviction in question as a second offender.
The 'Second Department takes the same position: “ Appellant is entitled to be sentenced as a second felony offender, notwithstanding that under section 1941 of the Penal Law the sentences of second and third felony offenders are governed by the same formula.” (Citing the Shaw and Gifford cases; see People v. French, 5 A D 2d 852, 853.)