[Crim. No. 11721.   In Bank.   Mar. 18, 1968.]

In re WILLIAM JOSEPH FINLEY on Habeas Corpus.

William Joseph Finley, in pro. per., and Charles Y. Boegge-man, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and Edward A. Hinz, Jr., Deputy Attorneys General, for Respondent.

TRAYNOR, C. J.—In 1946 a jury found petitioner guilty of first degree robbery. The information alleged and petitioner admitted prior convictions of burglary in the State of Washington in 1932 and first degree robbery in California in 1938, with service of a term of imprisonment for each. The Los Angeles County Superior Court adjudged petitioner an habit-

ual criminal and sentenced him to life imprisonment. (Pen. Code, § 644, subd. (a).)[1] Petitioner did not appeal.[2]

In this habeas corpus proceeding petitioner attacks the determination of habitual criminality. He contends that the determination must fall because the 1932 Washington burglary conviction was not of an offense the minimum elements of which meet the California definition of burglary or of any other crime listed in section 644. Petitioner invokes propositions enunciated over vigorous dissents in *In re McVickers* (1946) 29 Cal.2d 264, [176 P.2d 40], and *In re Seeley* (1946) 29 Cal.2d 294 [176 P.2d 24], that permit the habeas corpus petitioner who challenges an habitual criminal adjudication a wider scope of review than is available when the writ is sought to review a judgment of conviction of crime. The *McVickers* majority concluded at page 270 that ''the writ can consistently be made available to a prisoner who has been adjudged an habitual criminal although in truth and fact he is not, without so enlarging its scope as to make it in effect . . . a writ of error to review the correctness of a conviction.''

Although Penal Code section 1025 provides that a defendant's admission that he has suffered a previous conviction charged in the accusatory pleading ''must, unless withdrawn by consent of the court, be conclusive of the fact of his having suffered such previous conviction in all subsequent proceedings,'' under the *McVickers-Seeley* line of cases the admitted

---

[1]Penal Code section 644, subdivision (a), provided in 1946, as it now provides, that ''Every person convicted in this State of the crime of robbery [or other named felonies] . . . who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . either in this State or elsewhere, of the crime of robbery, burglary, [or other named felonies] . . . shall be adjudged a [*sic*] habitual criminal and shall be punished by imprisonment in the state prison for life.'' In addition to an express life sentence an habitual criminal adjudication carries with it a substantial increase in time that must be served before the defendant becomes eligibile for parole. (Pen. Code, §§ 3047, 3047.5, 3048, 3048.5.)

Since 1927 Penal Code section 668 has provided that one who has been convicted in another state of an offense that, ''if committed within this State,'' could have been punished under the laws of this state by imprisonment in the state prison ''is punishable for any subsequent crime committed within this State in the manner prescribed [in section 644] . . . as if such prior conviction had taken place in a court of this State.''

[2]Petitioner's codefendants appealed and the judgments against them were affirmed in *People* v. *Dunlop* (1947) 79 Cal.App.2d 207 [179 P.2d 658]. Later petitioner joined his codefendants in an unsuccessful *coram nobis* proceeding. (*People* v. *Dunlop* (1951) 102 Cal.App.2d 314, 316-317 [227 P.2d 281].)

"fact of his having suffered such previous conviction" is not a conclusive admission that "such previous conviction" was in law or fact of a felony listed in section 644. The *McVickers-Seeley* extension of habeas corpus permits the petitioner who has been adjudged an habitual criminal to go outside the record of the California prosecution that resulted in the determination of habitual criminality and to bring in the record of the challenged foreign prior conviction; he is allowed to call the attention of the habeas corpus court to the law of the state where it was suffered; and he is allowed thus to show that the minimum adjudicated elements of the foreign crime are not those of a California felony enumerated in section 644. (*In re Wolfson* (1947) 30 Cal.2d 20, 23, 24 [180 P.2d 326]; *In re McVickers, supra,* 29 Cal.2d at p. 267; *In re Seeley, supra,* 29 Cal.2d at p. 300.) The *McVickers-Seeley* line of cases holds also that unless the record before the habeas corpus court establishes the adjudicated elements of the previous offense, the court will assume that the prior conviction was for the least offense punishable under the foreign statute. (*In re McVickers, supra,* 29 Cal.2d at p. 278; see *People* v. *Burns* (1960) 181 Cal.App.2d 480, 483 [5 Cal.Rptr. 301]; *People* v. *Richardson* (1946) 74 Cal.App.2d 528, 540 [169 P.2d 44].)

Here the only record of the 1932 Washington conviction now available, an authenticated copy of the judgment, sentence, and commitment, shows that petitioner was convicted of second degree burglary on his plea of guilty. Second degree burglary as defined by Washington statute is committed by entry with intent to commit any crime, whether misdemeanor or felony, or by innocent entry followed by the commission of any crime and breaking out. (Rem. Comp. Stat., § 2579.)[3] In California, however, the crime of burglary is committed by entry "with intent to commit grand or petit larceny or any felony. . . ." (Pen. Code, § 459.) Thus petitioner has established that his Washington conviction could have been based on acts not constituting burglary in California and he has therefore shown that "the least adjudicated elements of the Washington offense are not equivalent to the elements of the similarly denominated California offense enumerated in sec-

---

[3]Section 2579: "Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling-house of another or break and enter, or, having committed a crime therein, shall break out of, any building . . . wherein any property is kept . . . shall be guilty of burglary in the second degree. . . ."

tion 644 of the Penal Code and the Washington conviction is not competent to support a determination of habitual criminality under that section.'' (*In re Pearson* (1947) 30 Cal.2d 871, 876 [186 P.2d 401].)

The Attorney General asks us to overrule the *McVickers-Seeley* line of cases and to adopt the rule urged in the dissenting opinion in *Seeley,* 29 Cal.2d at p. 303 (see also the dissent in *McVickers,* 29 Cal.2d at p. 281] that when an adjudication of habitual criminality is attacked by habeas corpus on the ground that the prior convictions were of crimes that do not meet the definition of offenses listed in section 644, review extends only to the trial court's jurisdiction to make such determination and is limited to the face of the record in the criminal proceeding that resulted in the determination. That is the normal scope of inquiry on habeas corpus when as here there is no issue of a fundamental constitutional deprivation. (See generally *In re Jackson* (1964) 61 Cal.2d 500, 503-504 [39 Cal.Rptr. 220, 393 P.2d 420]; *In re Raner* (1963) 59 Cal.2d 635, 639 [30 Cal.Rptr. 814, 381 P.2d 638]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 16-17 [9 Cal.Rptr. 607, 357 P.2d 839]; *In re McInturff* (1951) 37 Cal.2d 876, 880 [236 P.2d 574]; *In re Bell* (1942) 19 Cal.2d 488, 492-494 [122 P.2d 22].) Whatever may have been the merits of the extension of the scope of habeas corpus as announced by *McVickers* and *Seeley* in 1946,[4] however, their holdings have not led to reckless and ill-considered use of the writ to impair the finality of judgments; the application of their rules as to the extent of post-conviction collateral review has been limited to cases presenting the same narrow questions that were raised by *McVickers* and *Seeley* themselves.

The Attorney General urges that the *McVickers-Seeley* line of cases improperly permits relief without regard to established rules of policy (see *In re Streeter* (1967) 66 Cal.2d 47, 51-52 [56 Cal.Rptr. 824, 423 P.2d 976]; *In re Shipp* (1965) 62 Cal.2d 547, 553 [43 Cal.Rptr. 3, 399 P.2d 571]) that require the applicant for habeas corpus to excuse his failure to present his contention at trial and on appeal and to explain his delay in raising it on habeas corpus. The *McVickers-Seeley* use of the writ, however, does not permit the opening or

---

[4]Those decisions did not originate the use of the writ that we are considering here. They accepted and presented a rationale for an extension of the writ that had already been made. (See cases cited in *McVickers,* 29 Cal.2d at p. 274, dissent at pp. 288-289, and *Seeley,* 29 Cal.2d at p. 298, dissent at p. 306.)

reopening of questions calling for resolution on the basis of the testimony of witnesses who may have died or disappeared or whose memories have faded. Nor does a collateral attack on an habitual criminal adjudication on *McVickers-Seeley* grounds involve difficulties with respect to records of past convictions comparable to those raised by a constitutional attack based on the retrospective application of *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]. (See *In re Woods* (1966) 64 Cal.2d 3, 8 [48 Cal.Rptr. 689, 409 P.2d 913].) The fact that an accused suffered a foreign conviction of a crime is made officially of record at the time and place of such conviction, and the law of the jurisdiction where he suffered it is judicially noticed. (*In re McVickers, supra,* 29 Cal.2d 264, 272, 276, 287; Pen. Code, § 969b; Evid. Code, §§ 453, 1530.) The least adjudicated elements of the prior conviction remain the same whether it is questioned in the trial court at the time of the determination of habitual criminality or on habeas corpus after such determination has become final. Neither the People nor the defendant can go behind those adjudicated elements in an attempt to show that he committed a greater, lesser, or different offense. (*In re Norcutt* (1948) 31 Cal.2d 743, 744 [192 P.2d 453]; *In re Wolfson, supra,* 30 Cal.2d 20, 31; *In re McVickers, supra,* 29 Cal.2d 264, 276.)

The Attorney General argues, however, that if petitioner had questioned the sufficiency of the 1932 Washington conviction in 1946 when it was used as a basis of the habitual criminal adjudication, the People might have been able to prove by then existing but since vanished Washington records that in fact petitioner's conviction was of an offense equivalent to California second degree burglary. Since the only available record of the foreign conviction shows merely that it was for a named Washington offense, *McVickers* does not require the petitioner to bear the normal burden of one who seeks habeas corpus relief by proving that the Washington conviction was insufficient; instead he makes out its insufficiency simply by standing on the decisionally established assumption that the conviction was for the least offense punishable under the Washington statute. When we examine the applications that have been made of this anomalous rule giving the habeas corpus petitioner the benefit of a doubt in order to sustain his attack on the final determination of habitual criminality, we find only a narrowly limited change

in the burden of proof on collateral attack upon a prior conviction used to increase punishment, not a general principle requiring the People repeatedly to bear the burden of defending final judgments of conviction.

We are not impressed by the argument that the *Seeley* and *McVickers* rules have operated unfairly to the state or conferred bonuses on prisoners for delay in attacking habitual criminal adjudications. At least since the 1927 amendment of Penal Code section 668, referring specifically to section 644 (fn. 1, *supra*), prosecutors have had ample warning that they should be prepared to support a foreign conviction charged as the basis for the increased punishment attendant on habitual criminality by proof that it was of an offense that, if committed in California, would be punishable by imprisonment in the state prison. The 1927 amendment of section 668, considered with section 644, advised prosecuting attorneys as well as defendants that an offense denominated a ''felony'' in another jurisdiction is not necessarily a crime that, if committed in California, would be punishable by imprisonment in the state prison, and that the elements of an offense that another jurisdiction calls by a name listed in section 644 are not necessarily those of a similarly named California offense. (See *In re McVickers, supra,* 29 Cal.2d 264, and dissent at p. 290.) Beginning in 1934 decisions on appeal tested the elements of prior foreign convictions underlying habitual criminal adjudications in the manner later approved in the *McVickers-Seeley* line of cases on habeas corpus, that is, by reference to the records and judicially noticed law of the jurisdiction where the prior conviction was suffered. (*People v. Pace* (1934) 2 Cal.App.2d 464, 466 [38 Cal.Rptr. 202]; *People v. Hayes* (1934) 3 Cal.App.2d 59, 63 [39 P.2d 213]; but see *People v. Shaw* (1934) 137 Cal.App. 533, 536-537 [30 P.2d 1031].) The *McVickers-Seeley* use of habeas corpus was anticipated by decisions of the Courts of Appeal (*In re Connell* (1945) 69 Cal.App.2d 360, 361 [156 P.2d 483]; *In re Howard* (1945) 69 Cal.App.2d 164 [158 P.2d 408]; *In re Thompson* (1946) 72 Cal.App.2d 747 [165 P.2d 533]; *In re Kingsbury* (1946) 74 Cal.App.2d 959, 962 [170 P.2d 82]) and opinions of the Attorney General. (6 Ops.Cal.Atty.Gen. 36 (1945); 3 Ops.Cal.Atty.Gen. 198 (1944).) It should have been apparent that ''where prior convictions are alleged the People should be prepared to prove them'' (*People v. Parra* (1961) 193 Cal.App.2d 93, 95 [13 Cal.Rptr. 828]) and to prove them beyond a reasonable doubt. (*People v. Morton*

(1953) 41 Cal.2d 536, 539 [261 P.2d 523].) Nevertheless prosecutors alleged and defendants admitted prior convictions that, although apparently sufficient to support an adjudication of habitual criminality, were in fact and in law not of crimes that met the California definitions of the offenses listed in section 644. Of course defendants were mistaken in permitting habitual criminal determinations based on such insufficient prior convictions to stand without prompt challenge, but prosecutors were mistaken in persisting in their use of foreign prior convictions that did not meet California standards.[5]

Application of the *McVickers-Seeley* rules in reported cases decided since their announcement dispels any notion that recidivists deliberately delayed challenging habitual criminal determination in the hope that a belated attack might give them some advantage. For several years after *McVickers* and *Seeley* were decided in December 1946 prisoners invoked them quite often, usually successfully[6] but occasionally to no avail.[7] The proceeding now before us is the first reported case since *In re Martin* (1952) *supra*, 115 Cal. App.2d 188, invoking the rules of *McVickers* and *Seeley* on a collateral attack in the precise factual situation that those rules were designed to correct. This decisional history does not suggest that repetitive offenders have been taking unfair

[5]The California Appellate Reports before *McVickers* and *Seeley* show instances of foreign prior convictions underlying adjudications of habitual criminality that were corrected on appeal or habeas corpus because the foreign offense amounted to no more than larceny of $10 (*People* v. *Pace* (1934) *supra*, 2 Cal.App.2d 464, 466), larceny of some amount in excess of $15 (*People* v. *Hayes* (1934) *supra*, 3 Cal.App.2d 59, 63), driving an automobile with knowledge that it was stolen (*People* v. *Lohr* (1938) 28 Cal.App.2d 397, 399 [82 P.2d 615]), breaking and entering a building at night with no specific intent (*People* v. *McChesney* (1940) 39 Cal.App.2d 36, 41 [102 P.2d 455]), driving an automobile without the owner's permission (*In re Connell* (1945) *supra*, 68 Cal. App.2d 360, 361, 365), theft of clothing of the value of $45 (*In re Howard* (1945) *supra*, 69 Cal.App.2d 164), larceny of $35 (*In re Thompson* (1946) *supra*, 72 Cal.App.2d 747), and obtaining $10 by false pretenses (*In re Kingsbury* (1946) *supra*, 74 Cal.App.2d 959, 962).

[6]*In re Harincar* (1946) 29 Cal.2d 403, 406, fn. 2 [176 P.2d 58]; *In re Pearson* (1947) *supra*, 30 Cal.2d 871, 876; *In re Bramble* (1947) 31 Cal.2d 43, 52 [187 P.2d 411]; *In re Galloway* (1947) 78 Cal.App.2d 880 [178 P.2d 469]; *In re Lamey* (1948) 85 Cal.App.2d 284, 288-289 [193 P.2d 66]; *In re Mead* (1949) 92 Cal.App.2d 536, 537 [206 P.2d 1091]; *In re Page* (1950) 99 Cal.App.2d 218 [221 P.2d 167]; *In re Martin* (1952) 115 Cal.App.2d 188, 191 [251 P.2d 745].

[7]*In re Wolfson* (1947) *supra*, 30 Cal.2d 20; *In re Tedford* (1948) 31 Cal.2d 693, 695 [192 P.2d 3]; *In re Norcutt* (1948) *supra*, 31 Cal.2d 743, 744; *In re Schunke* (1947) 81 Cal.App.2d 588, 590 [184 P.2d 700].

advantage of the State of California under *McVickers* and *Seeley*. The rules of those cases designed to permit review of erroneous determinations of habitual criminality have not been extended to factual situations other than those that they were intended to correct, and we decline to overrule them.

Petitioner also attacks his 1938 and 1947 California convictions by averments directed to claimed denial of the right to counsel. The records of those California proceedings refute his contentions that he was denied that right.

The 1946 adjudication of habitual criminality (Los Angeles County Superior Court No. 105382) is set aside and the Adult Authority is directed to disregard it. Petitioner, however, is properly imprisoned under indeterminate sentences with maximum terms of life imprisonment. The order to show cause is discharged and the petition for a writ of habeas corpus is denied.

Peters, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Peek, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.